UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANET ROLLAND, individually and on behalf all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPARK ENERGY, LLC,<br><br>Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff Janet Rolland ("Plaintiff") brings this action against Spark Energy, LLC ("Defendant" or "Spark"), by and through her attorneys, individually and on behalf of all others similarly situated, and alleges with personal knowledge as to her own actions, and upon information and belief as to those of others, as follows:

**Nature of the Case**

1. This action seeks to redress Spark's deceptive pricing practices that have caused thousands of consumers to pay considerably more for their electricity than they should otherwise have paid.

2. Defendant engages in a classic bait-and-switch deceptive marketing scheme aimed at consumers hoping to save on the cost of electricity. It lures consumers into switching by offering a teaser rate that is fixed for a limited number of months and initially lower than local utility rates for electricity. Once that initial rate expires, Spark switches its customers over to a "variable market rate" that "may vary according to market conditions." A reasonable consumer thus expects that after the initial rate expires, he or she will receive a variable rate that might

{00284267 }

vary from the fixed rate that he or she was receiving, depending on whether market conditions had changed; that is, a variable market rate. Thus, a reasonable consumer would expect that Spark's variable market rate would reflect market conditions, including wholesale market rates and conditions and the rates other market participants charge (including local utilities).

3. But what Spark does not inform customers is that its variable rate is invariably substantially higher than the initial teaser rate, that it does not fluctuate based on changes in the wholesale market, and that it does not vary according to other market rates because Spark's rate is significantly higher than the rates local utilities charge and the rates most other ESCOs charge (including Spark's own fixed rates).

4. Plaintiff and reasonable consumers were also misled and deceived because Spark's variable rate never materially varies based on market conditions because the variable rate does not vary based on changes in competitors' rates and it does not vary based on changes in wholesale rates. Instead, Spark just raises the rate as high as it thinks it can without causing its customers to quit and it leaves the rate high no matter what happens with its competitors' rates or the wholesale market rates. No reasonable consumer would expect that there would be no connection between market conditions and Spark's variable rates.

5. As a result, consumers are being fleeced millions of dollars in exorbitant charges for electricity.

6. This suit is brought pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1 *et seq*. and common law on behalf of a class of consumers who purchased electricity on a variable rate from Defendant from April 19, 2011, to the present. It seeks, *inter alia*, injunctive relief, actual damages and refunds, treble damages, punitive damages, attorneys' fees, and the costs of this suit.

**Parties**

7. Plaintiff Janet Rolland is a citizen of New Jersey residing in Trenton, New Jersey. Ms. Rolland was a Spark customer for electricity from February 2012 to December 2014. As a result of Defendant's deceptive conduct, she incurred excessive charges for electricity.

8. Defendant Spark Energy, LLC is a limited liability company organized under the laws of Texas, with principal place of business in Texas. It is a retail energy supplier, providing electricity services to residential customers in the United States, including New Jersey where it is currently licensed to operate. It has thousands of customers in New Jersey and elsewhere, and tens of millions of dollars in revenues. It previously operated as Spark Energy, LP in New Jersey and other states.

**Jurisdiction**

9. Defendant's status as limited liability company renders it an "unincorporated association" pursuant to the Class Action Fairness Act ("CAFA"), and under CAFA, an unincorporated association is a citizen of the state where it has its principal place of business and the state under whose laws it is organized. *See* 28 U.S.C. § 1332(d)(10).

10. Jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy is in excess of $5 million.

**Operative Facts**

11. In 1999, the electric utility industry within the State of New Jersey was restructured. Among the goals of the reorganization were increased competition and deregulation within the industry, with an eye towards achieving greater consumer choice and an

overall reduction of energy rates.  As a result, the State's electric industry is open to competition, and consumers may choose their supplier of electricity.

12.     The new energy suppliers, who compete against local utilities such as Public Service Electric and Gas Company ("PSE&G"), are known as energy service companies, or "ESCOs."  While ESCOs supply the power, the delivery of electricity to homes remains the job of the local utilities.

13.     As part of the deregulation plan, ESCOs, such as Defendant, do not have to file with the New Jersey Board of Public Utilities the electricity rates they charge or the method by which they set their rates.

14.     However, Defendant takes advantage of the deregulation and the lack of regulatory oversight in the energy market to deceptively charge consumers exorbitant rates for electricity.  In fact, Defendant's rates are substantially higher than rates of other ESCOs or local utilities and wholesale market rates.

### Spark Energy, LLC, Charges Deceptively High Electricity Rates

15.     Spark engages in a classic bait-and-switch deceptive scheme.  It lured Ms. Rolland into switching to its electricity supply service by offering her a fixed rate that was lower than her then-current rate with her local utility (PSE&G), and she accepted the offer.  Ms. Rolland stayed on that fixed rate for 12 months before she was switched to Spark's standard variable rate.  Not surprisingly, the rate Spark charged after she was moved to the variable rate was always substantially higher than her initial rate, the rates PSE&G charged, and the rates other electricity retailers charged.

16.     After Ms. Rolland agreed to enroll in Spark's electricity service, Spark provided her its standard "Terms of Service."  The Terms of Service, which is the contract between

Plaintiff and Defendant, provided for a rescission period during which it was not effective. Thus, the Terms of Service constituted a representation as to what rate Ms. Rolland would receive when she was placed on the variable rate.

17. The Terms of Service further provides that after the expiration of the initial fixed rate, Plaintiff would be switched to a "variable market rate." Spark also represented that after her fixed rate expired, the new rate may "vary according to market conditions." That is, Spark represented that the new variable rate might vary from the fixed rate that just expired "according to market conditions." Thus, a reasonable consumer would expect either that the rate would remain the same as the fixed rate or that it would vary based on changes in market conditions (namely, wholesale market costs and conditions and the rates charged by other ESCOs and the local utility).

18. But such a consumer would be wrong, because Spark's variable rate is not a market variable rate because it does not reflect changes in wholesale costs and conditions and it is substantially higher than other rates available to consumers in the market. And Spark's variable rate does not vary based on changes in wholesale costs or the rates its competitors charge.

19. In particular, a reasonable consumer would understand and expect that "market conditions" for retail electricity would include the prices that Spark's competitors charge, including Spark's primary competitor PSE&G. That expectation would be frustrated.

20. Ms. Rolland was a Spark electricity customer from February 25, 2012 to December 24, 2014. After the first year of service, she was switched to Spark's variable rate. Immediately, Spark's rate jumped a remarkable 108% from $0.1069 to $0.2220 per kilowatt hour (kWh). In contrast, the local utility (PSE&G) rate, *i.e.*, the rate PSE&G would have charged Ms.

Rolland had she purchased electricity from PSE&G, merely increased by 1%. Spark's variable rates stayed substantially higher than PSE&G rates for the rest of Ms. Rolland's service period. They were higher than PSE&G rates by 93% to 114%. On average, they were higher by about 105%, with Spark rates averaging $0.2309 kWh and PSE&G rates averaging $0.1127 kWh. From February 26, 2013 through December 24, 2014, when Spark variable rates were in effect, Spark rates were higher by at least 100% for 17 of the 22 billing periods. Price disparity was most pronounced from March 27, 2014 through December 24, 2014, when, except for one billing period (June 26, 2014 to July 26, 2014), Spark rates were at least 110% higher than PSE&G rates, with the price disparity reaching its peak at 114% for the billing period April 25, 2014 to May 27, 2014. Moreover, Spark's variable rate was also consistently substantially higher than other electricity rates available in the market, including its own fixed rates and introductory rates.

21. In fact, after the abrupt 108% rate hike on the 13th month of service, the price per kilowatt hour that Spark charged further went up by 8% through the end of the service period, from $0.2220 to $0.2390 kWh, so that for the entire service period, Spark rates increased by about 124% from $0.1069 to $0.2390 kWh. At no time after the first year of service did Spark charge a variable rate less than $0.2220 kWh. Remarkably, Spark never lowered its rate from the preceding month, in contrast to fluctuating market conditions, demonstrating that the representation that the rates "may" vary according to market conditions is false and misleading because they never vary according to market conditions.

22. In contrast, while Spark's rates continued to rise, PSE&G rates showed greater price variability. For example, from PSE&G's rate dropped from $0.1155 kWh in June 2013 to $0.1097 in January 2014, a decrease of 5%, while Spark's rate remained unchanged at $0.2270

kWh.  Similarly, PSE&G's rate dropped from $0.1202 kWh to $0.1130 from June to December 2014, a 6% decline; Spark's rate did not change.

23. Spark's variable rates were always significantly higher than PSE&G's after the first year of service; indeed, while PSE&G's rates often declined, Sparks' rates increased.  Thus, Spark's rates are not in fact based on market conditions or competing prices otherwise available in the market.

24. A reasonable consumer would also understand that the price the local utility charges and market rates are part of prevailing market conditions and that a price based on prevailing market conditions would be competitive with the price charged by the local utility and other retail market rates.  But Spark's variable rate was never competitive with PSE&G's rate.

25. A reasonable consumer would also understand and expect that "market conditions" for retail electricity would include the wholesale price for electricity, that is, the price that Spark pays for the electricity it in turn supplies to its retail customers.

26. However, Spark's variable rate never varies with wholesale market prices.  One indicator of market prices is the locational marginal price ("LMP"), which is a benchmark used to establish the price of energy purchases and sales in the PJM wholesale electricity market (which includes New Jersey).

27. The disconnect between changes in the PJM and Spark variable rate demonstrates that Spark's rates never reflect changes in market conditions.  For example, when Spark's variable rate took effect on the 13th month of the service period, the weighted LMP had declined from $0.0492 to $0.0419 kWh (January 25 to March 26, 2013), a *reduction* of about 15%.  Yet during that same period, Spark's rate had jumped from $0.1069 to $0.2220 kWh, a drastic *increase* of about 108%.  Similarly, from June 27 to August 23, 2013, the weighted LMP had

declined from $0.0593 to $0.0381 kWh, a *reduction* of about 36%. Yet during that same period, Spark's variable rate had *increased* by 1.93% from $0.2227 to $0.2270 kWh. Then from January 25 to May 27, 2014, the weighted LMP had *decreased* by 57% from $0.0913 to $0.0393 kWh, while Spark's rate had *increased* by 4.64% from $0.2284 to $0.2390 kWh. Then Spark's rate stayed at $0.2390 for the rest of the service period notwithstanding declines in the weighted LMP of nearly 22% from $0.0428 to $0.0335 kWh, (June 26 to August 25, 2014), of about 8% from 0.0343 to 0.0315 kWh (August 26 to October 23, 2014), and of about 21.50% from $0.0424 to $0.0333 kWh (October 24 to December 24, 2014). Indeed, after the first year of service, Spark's rate increased by about 8% from $0.2220 to $0.2390 kWh, although the weighted LMP decreased by about 21% from $0.0419 to $0.0333 kWh. No reasonable consumer who is told that their variable rate may vary according to market conditions would expect that Spark's rate would consistently increase despite decreases in the wholesale price of electricity.

28. All that Spark offers customers is electricity delivered by local utilities, a commodity that has the exact same qualities as electricity supplied by other ESCOs or local utilities. Other than potential price savings, Spark offers nothing of value that other ESCOs or local utilities do not offer.

29. Spark's statements regarding its electricity rates are materially misleading, as the most important consideration for any reasonable consumer when choosing an energy supplier is price. No reasonable consumer who knows the truth about Spark's exorbitant rates would choose Spark as an electricity supplier. Other than potential price savings, there is nothing to differentiate Spark from other ESCOs or local utilities, and the potential for price savings is the only reason any reasonable consumer would enter into a contract for electricity supply with Spark.

30. Spark knows full well that it charges variable rates that are unconscionably high, and the misrepresentations it makes with regard to the rates being based on market conditions were made for the sole purpose of inducing customers to purchase electricity from Spark so that it can reap outrageous profits to the direct detriment of consumers without regard to the consequences high utility bills cause such consumers.  Therefore, Spark's actions were actuated by actual malice or accompanied by wanton and willful disregard for the well-being of consumers.

### Class Action Allegations

31. Plaintiff brings this action individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of all Spark variable rate electricity customers from April 19, 2011 to the present.

32. Excluded from the Class is Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant.

33. This action is brought as a class action for the following reasons:

    a. The Class consists of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

    b. There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

        i. whether Defendant violated N.J.S.A. 56: 8-1 *et seq*.;

        ii. whether Defendant breached its contracts with consumers by charging variable rates not based on market conditions;

    iii.  whether Defendant breached the covenant of good faith and fair dealing by exercising its unilateral price-setting discretion in bad faith, *i.e.*, to price gouge or upset the reasonable expectation of consumers that Spark variable rates would be competitive and reflect changes in the wholesale price of electricity;

    iv.  whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

    v.  whether Defendant should be enjoined from continuing to charge exorbitant rates based on factors other than market conditions.

  c.  The claims asserted by Plaintiff are typical of the claims of the members of the Class;

  d.  Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including class litigation involving consumer protection and ESCOs;

  e.  Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant;

  f.  Defendant has acted on grounds that apply generally to the Class, namely representing that its variable rates are based on market conditions when its rates are in fact always substantially higher, so that final injunctive relief prohibiting Defendant from continuing its deceptive practices is appropriate with respect to the Class as a whole;

  g.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

      i.      Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendant's violations of its legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendant will continue to retain its ill-gotten gains;

      ii.      It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

      iii.      When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

      iv.      A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions;

      v.      The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

      vi.      Defendant has acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate.

34.    Defendant's violations of N.J.S.A. 56: 8-1 *et seq*. and the common law are applicable to all members of the Class, and Plaintiff is entitled to have Defendant enjoined from engaging in illegal and deceptive conduct in the future.

## FIRST CAUSE OF ACTION
### (Violation of N.J.S.A. 56: 8-1 *et seq*.)

35.    Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

36.    The Consumer Fraud Act prohibits, *inter alia*:

The act, use or employment by any person of any unconscionable commercial

practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

N.J.S.A. § 56:8-2.

37. Defendant's misrepresentations and false, deceptive, and misleading statements with respect to the rates charged for electricity, as described above, constitute affirmative misrepresentations in connection with the marketing, advertising, promotion, and sale of electricity in violation of the Consumer Fraud Act.

38. Defendant's false, deceptive, and misleading statements and omissions would have been material to any potential consumer's decision to purchase electricity from Defendant.

39. Defendant also failed to inform customers that its rates are substantially higher than those based on market conditions and the wholesale price of energy. That information would have been material to any consumer deciding whether to purchase electricity from Defendant.

40. Defendant made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements.

41. Plaintiff and the other members of the Class entered into agreements to purchase electricity from Defendant and suffered ascertainable loss as a direct and proximate result of Defendant's actions in violation of the Consumer Fraud Act.

42. As a consequence of Defendant's wrongful actions, Plaintiff and the other members of the Class suffered an ascertainable monetary loss based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate based on market conditions or had they not switched to Defendant from their previous supplier.

43. Plaintiff and other members of the Class suffered an ascertainable loss caused by

Defendant's misrepresentations and omissions because they would not have entered into an agreement to purchase electricity from Defendant if the true facts concerning its rates had been known.

44. By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit. N.J.S.A. §§ 56:8-2.11, 8-2.12, 8-19.

45. Defendant knows full well that it charges variable rates that are unconscionably high, and the misrepresentations it makes with regard to the rates being based on market conditions were made for the sole purpose of inducing consumers to purchase electricity from it so it can reap outrageous profits to the direct detriment of New Jersey consumers and without regard to the consequences high utility bills cause such consumers. Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety, and well-being of Plaintiff and the other members of the Class. Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

46. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

47. Plaintiff and the Class entered into valid contracts with Defendant for the provision of electricity supply.

48. Pursuant to that contract, Spark agreed to charge a variable rate for electricity "according to market conditions."

49. Pursuant to the contract, Plaintiff and the Class agreed to pay Defendant's rate, and they did so.

50. However, Defendant failed to perform its obligations under the contract because it charged a variable rate neither based on market conditions, including the wholesale price of energy.

51. Plaintiff and the Class were damaged as a result because they were billed, and they paid, a charge for electricity that was higher than it would have been had Defendant based the rate on market conditions, including the wholesale price of energy.

52. By reason of the foregoing, Defendant is liable to Plaintiff and the rest of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## THIRD CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith & Fair Dealing)

53. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

54. Every contract contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract. The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

55. Under its agreements, Defendant had unilateral discretion to set the variable rate for electricity based on market conditions, including the wholesale price of energy.

56. Plaintiff reasonably expected that Defendant would attempt to make a reasonable profit in setting its rates and selling electricity to consumers. Nonetheless, Plaintiff reasonably expected that the variable rates for electricity would, notwithstanding Defendant's profit goals, reflect market conditions, including competing rates and the wholesale price of electricity, and

that Defendant would refrain from price gouging. Without these reasonable expectations, Plaintiff and other Class members would not have agreed to buy electricity from Defendant.

57.     Defendant breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its unilateral rate-setting discretion to price gouge and frustrate Plaintiff and other Class members' reasonable expectations that the variable rate for electricity would reflect market conditions, including competing rates and the wholesale price of electricity.

58.     As a result of Defendant's breach, Defendant is liable to Plaintiff and other Class members for actual damages in an amount to be determined at trial and attorney's fees.

WHEREFORE, Plaintiff respectfully requests that the Court should enter judgment against Defendant as follows:

1.     Certifying this action as a class action, with a class as defined above;

2.     On Plaintiff's First Cause of Action, awarding against Defendant damages that Plaintiff and the other members of the Class have suffered, trebled, and granting appropriate injunctive relief;

3.     On Plaintiff's Second Cause of Action, awarding against Defendant damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions;

4.     On Plaintiff's Third Cause of Action, awarding against Defendant damages that Plaintiff and other members of the Class have suffered as a result of Defendant's actions;

5.     Awarding Plaintiff and the Class punitive damages;

6.     Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

7.     Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

Dated: April 19, 2017
Roseland, New Jersey

**MAZIE, SLATER, KATZ & FREEMAN, LLC**

By: */s/ Matthew R. Mendelsohn*
Matthew R. Mendelsohn
103 Eisenhower Parkway
Roseland, NJ 07922
(973) 228-9898
Fax: (973) 328-0303
mmendelsohn@mskf.net

Greg Blankinship (*pro hac vice forthcoming*)
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
(914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com

*Attorneys for Plaintiff and Putative Class*