# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

JANET ROLLAND, individually and
on behalf of all others similarly situated,

              Plaintiff,

      v.

SPARK ENERGY, LLC,

              Defendant.

No. 3:17-CV-02680-MAS-LHG

---

## BRIEF IN OPPOSITION TO DEFENDANT'S
## THIRD MOTION TO DISMISS COUNT I AND MOTION
## TO DISMISS OR STRIKE MULTI-STATE CLASS ALLEGATIONS

---

Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068

D. Greg Blankinship
Todd S. Garber
Chantal Khalil
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
445 Hamilton Avenue, Suite 605
White Plains, New York 10601

*Attorneys for Plaintiff and the Putative Class*

{00296014 }

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ............................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .............................................3

ARGUMENT ..................................................................................6

I.    PLAINTIFF HAS ADEQUATELY PLED WITH PARTICULARITY
A CLAIM UNDER THE NEW JERSEY CONSUMER FRAUD ACT ........6

    A.    Legal Standard....................................................7

        1.    The New Jersey Consumer Fraud Act ........................7

        2.    Federal Rule Of Civil Procedure 12(b)(6) ...............10

        3.    Federal Rule Of Civil Procedure 9(b)......................10

    B.    Defendant Imporperly Attempts To
Insert A Reliance Requirement Into The NJCFA .............12

    C.    Plaintiff Properly Alleges Unlawful Conduct By Defendant .............13

    D.    Plaintiff Properly Alleges A Causal Nexus Between
Defendant's Price Gouging And Her Ascertainable Loss .................21

II.    PLAINTIFF HAS ALLEGED A MULTI-STATE CLASS..........................24

III.    PLAINTIFF'S CLASS ALLEGATIONS
SHOULD NOT BE DISMISSED OR STRICKEN ......................................29

    A.    The Requirements To Strike Allegations Have Not Been Satisfied ...29

    B.    Any Request To Strike Or Dismiss Is Premature ...............31

    C.    Plaintiff Does Have Standing...........................34

CONCLUSION ..............................................................39

# TABLE OF AUTHORITIES

## Cases

*Alves v. Verizon*,
No. 08-3196, 2010 WL 2989988 (D.N.J. July 27, 2010) .....................................12

*Am. Airlines v. Wolens*,
513 U.S. 219 (1995)........................................................................................27

*Bedi v. BMW of North America, LLC*,
No. 15-1898, 2016 WL 324950 (D.N.J. Jan. 27, 2016) ......................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................10

*Boyko v. Am. Intern. Group, Inc.*,
No. 08-2214, 2012 WL 1495372 (D.N.J. Apr. 26, 2012) ...................... 27, 28, 33

*Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco County*,
137 S. Ct. 1773 (2017)....................................................................................39

*Chan v. Daimler AG*,
No. 11-5391, 2012 WL 5827448 (D.N.J. Nov. 9, 2012)....................................38

*Claridge v. N. Am. Power & Gas, LLC*, No.,
15-1261, 2015 WL 5155934 (S.D.N.Y. Sept. 2, 2015)......................................16

*Construcciones Haus Soceidad v. Kennedy Funding Inc.*,
No. 07-392, 2008 WL 1882857 (D.N.J. Apr. 24, 2008)......................................11

*Cox v. Chrysler Group, LLC*,
No. 14-7573, 2015 WL 5771400 (D.N.J. Sept. 30, 2015)............................. 31, 32

*Cox v. Sears Roebuck & Co.*,
647 A.2d 454 (N.J. 1994) ................................................... 9, 13, 17, 23

*Crozier v. Johnson & Johnson Consumer Cos., Inc.*,
    901 F. Supp. 2d 494 (D.N.J. 2012) .................................................................. 23, 24

*Dewey v. Volkswagen*,
    558 F. Supp. 2d 505 (D.N.J. 2008) (denying motion ...................................... 8, 24

*Dzielak v. Whirlpool Corp.*,
    26 F. Supp. 3d 304 (D.N.J. 2014) .........................................................................38

*Elias v. Ungar's Food Prods., Inc.*,
    252 F.R.D. 233 (D.N.J. 2008).................................................................... 8, 12, 22

*Fishman v. Gen. Elec. Co.*,
    No. 12-585, 2013 WL 1845615 (D.N.J. Apr. 30, 2013).......................................32

*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*,
    No. 17-564, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017)................................39

*Francis  E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*,
    945 F. Supp. 2d 543 (D.N.J. 2013) .......................................................................19

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ................................................................................11

*Gennari v. Weichert Co. Realtors*,
    148 N.J. 582, 691 A.2d 350 (1997) .....................................................................12

*Gonzales v. Agway Energy Services, LLC*,
    No. 18-235 (N.D.N.Y. Oct. 22, 2018) ..................................................................12

*Grandalski v. Quest Diagnostics Inc.*,
    767 F.3d 175 (3d Cir. 2014) ......................................................................... 27, 28

*Gray v. Bayer Corp.*,
    No. 08-4716, 2011 WL 2975768 (D.N.J. July 21, 2011) .....................................28

*Hamlen v. Gateway Energy Services Corp.*,
    No. 16-3526, 2017 WL 6398729 (S.D.N.Y. Dec. 8, 2017)..................................18

*Hargrove v. Sleepy's, LLC*,
No. 10-1138, 2010 WL 11492390 (D.N.J. Nov. 18, 2010)..................................33

*Harkes v. The Accessory Corp., Inc.*,
No. 09-2556, 2010 WL 919616 (D.N.J. Mar. 10, 2010) .....................................11

*Harnish v. Widener Univ. Sch. of Law*,
931 F. Supp. 2d 641 (D.N.J. 2013)........................................................................7

*Harnish v. Widener Univ. School of Law*,
921 F. Supp. 2d 641 (D.N.J. 2013)......................................................................13

*Hughes v. Panasonic Consumer Elecs. Co.*, No.,
10-846, 2011 WL 2976839 (D.N.J. July 21, 2011) .............................................29

*In re Asacol Antitrust Litig.*,
No. 18-1065, 2018 WL 4958856 (1st Cir. Oct. 15, 2018)........................... 35, 36

*In re Chinese-Manufactured Drywall Products Liab. Litig.*,
No. 09-2047, 2017 WL 5971622 (E.D. La. Nov. 30, 2017).................................39

*In re FieldTurf Artificial Turf Mktg. and Sales Practices Litig.*,
No. 17-2779, 2018 WL 4188459 (D.N.J. Aug. 31, 2018)...................... 32, 33, 34

*In re Flonase Antitrust Litig.*,
610 F. Supp. 2d 409 (E.D. Pa. 2009)...................................................................38

*In re Thalomid and Revlimid Antitrust Litig.*,
No. 14-6997, 2015 WL 9589217 (D.N.J. Oct. 29, 2015).............................. 32, 37

*In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig.*,
No. 08-939, 2009 WL 2940081 (D.N.J. Sept. 11, 2009).....................................29

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013) .................................................................. 27, 28, 33

*International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
192 N.J. 372, 929 A.2d 1076 (N.J. 2007)............................................................12

*Iqbal v. Ashcroft*,
556 U.S. 662 (2009)................................................................................10

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) .............................................. 27, 28, 33

*Kalow & Springnut, LLP v. Commence Corp.*,
No. 07-3442, 2009 WL 44748 (D.N.J. Jan. 6, 2009) ..........................................29

*Lamictal Indirect Purchaser and Antitrust Consumer Litig.*,
172 F. Supp. 3d 724 (D.N.J. 2016)......................................................11

*Landman & Funk PC v. Skinder–Strauss Assoc.*,
640 F.3d 72 (3d Cir. 2011) ...................................................................30

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
897 F.3d 88 (2d Cir. 2018) .............................................. 35, 37

*Leon v. Rite Aid Corp.*,
774 A.2d 674 (N.J. Super. Ct. App. Div. 2001) .....................................9

*Lightning Lube v. Witco Corp.*,
4 F.3d 1153 (3d Cir.1993) .......................................... 19, 20

*Maniscalco v. Bro. Intern. (USA) Corp.*,
709 F.3d 202 (3d Cir. 2013) ...............................................................26

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) .............................................. 8, 12, 23

*Melville v. Spark Energy, Inc.*,
No. 15-8706, 2016 WL 6775635 (D.N.J. Nov. 15, 2016)...................... 13, 14, 15

*Merino v. Wells Fargo & Co.*,
 No. 16-7840, 2017 WL 3908670 (D.N.J. Sept. 6, 2017)......................................30

*Mladenov v. Wegmans Food Mkts., Inc.*,
 124 F. Supp. 3d 360 (D.N.J. 2015)............................................................... 23, 24

*Morcom v. LG Elecs. USA, Inc.*,
 No. 16-4833, 2017 WL 8784836 (D.N.J. Nov. 30, 2017)..................................27

*Morris v. BMW of N.A., LLC*, No.,
 13-4980, 2014 WL 793550 (D.N.J. Feb. 26, 2014)...........................................31

*Morrison v. YTB Intern., Inc.*,
 649 F.3d 533 (7th Cir. 2011) ...................................................................... 34, 35

*Neuss v. Rubi Rose, LLC*,
 No. 16-2339, 2017 WL 2367056 (D.N.J. May 31, 2017) ............................ 30, 31

*New York Career Guidance Services, Inc. v. Wells Fargo Fin. Leasing, Inc.*,
 No. 1705-03, 2005 WL 1252315 (N.J. Super. Ct. Law Div. May 2, 2005)...........9

*Nirmul v. BMW of N.A., LLC*, No. 10-5586,
 No. 10-5586, 2011 WL 5195801 (D.N.J. Oct. 31, 2011)..................................38

*Ortiz v. Fibreboard Corp.*,
 527 U.S. 815 (1999)...........................................................................................33

*Peruto v. TimberTech Ltd.*,
 126 F. Supp. 3d 447 (D.N.J. 2015).....................................................................32

*Phillips v. Cty. of Allegheny*,
 515 F.3d 224 (3d Cir. 2008) ..............................................................................10

*Pinker v. Roche Holdings Ltd.*,
 292 F.3d 361 (3d Cir. 2002) ..............................................................................10

*Q±Food LLC v. Mitsubishi Fuso Truck of Am., Inc.*,
 No. 14-6046, 2015 WL 4603678 (D.N.J. July 30, 2015)...................................32

*Ramirez v. STI Prepaid LLC*,
  644 F. Supp. 2d 496 (D.N.J. Mar. 18, 2009) ........................................... 33, 34, 37

*Rolo v. City Investing Co. Liquidating Trust*,
  155 F.3d 644 (3d Cir. 1998) ...................................................................... 11

*Seippel v. Jenkens & Gilchrist, P.C.*,
  341 F. Supp. 2d 363 (S.D.N.Y. 2004) ........................................................ 31

*Noble v. Samsung Elecs. Am., Inc.*,
  No. 15–3713, 2018 WL 801590 (D.N.J. Feb. 8, 2018) ....................................... 26

*Simonson v. Hertz Corp.*,
  No. 10-1585,  2011 WL 1205584 (D.N.J. Mar. 28, 2011) ................................... 18

*Skeer v. EMK Motors, Inc.*,
  45 A.2d 508 (N.J. Super. Ct. App. Div. 1982) ........................................... 9

*Smajlaj v. Campbell Soup Co.*,
  782 F. Supp. 2d 84 (D.N.J. 2011) ............................................................. 7, 8, 9

*Smith v. Citimortgage, Inc.*,
  No. 15-7629, 2015 WL 12734793 (D.N.J. Dec. 22, 2015) ................................... 7

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) ..................................................................... 37, 38

*Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC*,
  417 F. Supp. 2d 632 (D.N.J. 2006) ............................................................. 11

*Szczubelek v. Cendant Mortg. Corp.*,
  215 F.R.D. 107 (D.N.J. 2002) ................................................................... 9

*Torres-Hernandez v. CVT Prepaid Sols., Inc.*,
  No. 08-1057, 2008 WL 5381227 (D.N.J. 2008) ........................................... 23, 24

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*,
  655 A.2d 417 (N.J. 1995) ....................................................................... 9, 17

*Unique Custom Landscaping v. Sterman*,
    No. 13368-06, 2009 WL 2461171 (N.J.App.Div. Aug. 13, 2009)......................18

*Vitale v. U.S. Gas & Electric, Inc.*,
    No. 14-4464, 2016 WL 1060807 (D.N.J. Mar. 16, 2016) ........................... passim

*Weske v. Samsung Elecs., Am., Inc.*,
    934 F. Supp. 2d 698 (D.N.J. 2013) .......................................................32

*Yang Chen v. Hiko Energy, LLC*,
    No. 14-1771, 2014 WL 7389011 (S.D.N.Y. Dec. 29, 2014)................................16

*Zuniga v. Am. Home Mortg.*,
    No. 14-2973, 2016 WL 6647932 (D.N.J. Nov. 8, 2016).....................................10

## Statutes

N.J. Stat. Ann. § 56 ......................................................................... 1, 7, 8

## Rules

Federal Rule Of Civil Procedure 15(a)(2) ................................................29

Federal Rule Of Civil Procedure 9(b)10........................................... passim

Federal Rule of Civil Procedure 12(b)(1) ......................................... 10, 31

Rule 23 of the Federal Rules of Civil Procedure ............................... 36, 37

## INTRODUCTION

In her Second Amended Class Action Complaint ("SAC") (ECF No. 30), plaintiff Janet Roland ("Plaintiff") alleges with specificity and detail that defendant Spark Energy, LLC ("Spark" or "Defendant") knowingly and intentionally made affirmative misrepresentations in its standard Customer Disclosure Statement and Terms of Service and in the renewal notice that it provides to customers, including Plaintiff.  Specifically, Defendant misrepresented that the "variable market rate" it charges is "competitively priced" and "may vary according to market conditions," when, in fact, this rate is neither competitive nor based on market conditions.

Plaintiff further alleges with specificity and detail that Defendant knowingly omitted material information by failing to disclose to Plaintiff and other customers that Defendant would charge a monthly administrative fee, notwithstanding a representation in its Customer Disclosure Statement customers that there would be no such fee.  Defendant also fails to inform customers, such as Plaintiff, that it will use numerous factors other than market conditions in setting its rates.  These affirmative misrepresentations and knowing omissions, as alleged, violate the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq*. ("NJCFA").

These claims, taken as true, as they must be on a motion to dismiss, sufficiently allege unlawful conduct by Defendant, ascertainable loss to Plaintiff, and a causal nexus between the unlawful conduct and the ascertainable loss.  They

also establish substantial aggravating circumstances, and put Defendant on notice of the precise misconduct with which it is charged.  Therefore, Plaintiff has met her burden under Fed. R. Civ. P. 9(b), and Defendant's motion to dismiss Plaintiff's NJCFA claim should be denied.

With respect to the claims for breach of contract and breach of implied covenant of good faith and fair dealing, the SAC alleges a multi-state class of "all Spark variable rate electricity customers from April 19, 2011 to the present."  SAC ¶ 50.  This definition does not contain a geographic limitation and covers all states in which Defendant offers a variable rate for electricity.  *Id*. ¶¶ 68-73.[1]  Defendant argues that these multi-state class allegations must be dismissed or stricken because Plaintiff does not have "standing" to represent a putative class whose members may be subject to the laws of different states.  However, courts within the Third Circuit will not dismiss or strike class allegations at the pleadings stage. Rather, the sufficiency of class allegations should be determined at the class certification stage, after the parties engage in discovery.  For this reason, this branch of Defendant's motion is premature.

Nevertheless, Plaintiff does, in fact, have Article III standing.  She has

---

[1] As Plaintiff has repeatedly represented to both Defendant and the Court, while Plaintiff alleges a multi-state class with respect to her common law contract claims, because of the limits of the scope of the NJCFA, Plaintiff's NJCFA claim is only being brought on behalf of a class of New Jersey residents.

alleged a redressable injury caused by Defendant.  That is all that is required under Article III.  Defendant confuses standing and predominance.  Once the minimal requirements for standing are satisfied, whether a plaintiff may assert a class that includes members whose individual claims may be subject to the laws of other states is an issue of predominance that should be addressed at the class certification stage.  Because claims for breach of contract do not materially vary from state to state, courts regularly find that multi-state or nationwide breach of contract classes -- despite the fact that they may be composed of members whose claims are subject to the laws of different states -- satisfy the Rule 23 predominance requirement and should be certified.

## FACTUAL AND PROCEDURAL BACKGROUND

When she was signing up for Defendant's electricity supply service in February 2012, Defendant provided Plaintiff with its standard Customer Disclosure Statement and Terms of Service by mail.  These documents explicitly stated that, following 12 months on a fixed rate plan, Defendant would provide Plaintiff with a "variable market rate" that "may vary" according only to "market conditions."  *See* SAC ¶ 19, Exhibit 1.  Defendant's representation to Plaintiff and other consumers was false, Defendant knew it to be false, and Defendant made this affirmative misrepresentation to induce customers to purchase its services.  *Id.* ¶ 42.

A reasonable consumer would understand and expect from Defendant's

representations that the variable market rate would remain the same as their initial fixed rate or that it would fluctuate in accordance with changes in market conditions (*i.e.* wholesale prices for electricity, and rates charged by local utilities and other energy providers).  However, as Plaintiff alleges with specificity and detail in her SAC, the rates that Defendant actually charge are not reflective of changes in market conditions, including changes in the wholesale prices it pays for electricity.

To the contrary, there are significant periods of time where Defendant's rates rise while wholesale costs decline.  When wholesale costs rise, the increase in Defendant's rates is disproportionately steep -- indeed, during the time Plaintiff was charged by Defendant for its energy services, Defendant <u>never</u> reduced its rate from the preceding month, despite fluctuating market conditions.  *Id.* ¶¶ 25-26, 30-31.  Likewise, Plaintiff has specifically illustrated that Defendant's actual rates do not reflect market conditions because they are much higher than rates charged by others in the market such as local utilities like PSE&G (Plaintiff's local utility).  *Id.* ¶¶ 24-27.

Plaintiff filed her original complaint on April 19, 2017.  ECF No. 1.  In her Complaint, Plaintiff alleged that Defendant violated the NJCFA, breached its contract with Plaintiff and class members, and breached the implied covenant of good faith and fair dealing.  *Id.*

On July 3, 2017, Defendant moved to dismiss all claims in Plaintiff's original complaint.  ECF No. 17.  On December 7, 2017, this Court denied Defendant's motion with respect to all but one of Plaintiff's claims.  ECF Nos. 27, 34.  The Court dismissed Plaintiff's NJCFA claim without prejudice, and provided guidance that Plaintiff could replead this claim with greater specificity, in order to meet the heightened pleading standards of Fed. R. Civ. P. 9(b), but denied the motion to dismiss Plaintiff's claims for breach of contract and breach of implied covenant of good faith and fair dealing.  *See* ECF Nos. 28; 34 at 6:7-12.

Plaintiff filed her First Amended Complaint on January 8, 2018.  *See* ECF No. 30.  On February 5, 2018, Defendant filed a motion to dismiss Plaintiff's NJCFA claim.  ECF No. 37.  On July 11, 2018, the Court dismissed Plaintiff's NJCFA claim without prejudice and granted Plaintiff leave to replead.  ECF Nos. 43-44.

Plaintiff filed her SAC on August 17, 2018, providing additional factual allegations regarding Defendant's misrepresentations and omissions, including: the misrepresentation made in the renewal letter, outside Defendant's Customer Disclosure Statement and Terms and Conditions, that the variable rate would be competitive; details on the extent to which Defendant applied factors outside of normal market conditions in setting is rates; and Defendant's failure to notify customers that it would begin charging them a monthly administrative fee when it

had previously represented that there would be no such fee.  ECF No. 48.

With respect to the claims for breach of contract and breach of implied covenant of good faith and fair dealing, the SAC -- as with all previous iterations of the Complaint -- alleges a multi-state class of "all Spark variable rate electricity customers from April 19, 2011 to the present."  SAC ¶ 50.  This definition does not contain a geographic limitation and covers all states in which Defendant has breached its contractual obligations to customers based on a variable rate for electricity.  *Id.* ¶¶ 68-73.

On September 14, 2018, Defendant filed a motion to dismiss Plaintiff's NJCFA claim in the SAC.  ECF No. 54.  Although Plaintiff's SAC makes no changes to the class definition or the scope of the class as described in the Causes of Action (SAC ¶¶ 50, 54-79), for the first time after 18 months of litigation, Defendant seeks to strike all multi-state class allegations.  ECF No. 54.  For the reasons set forth herein, this dilatory motion should be denied in its entirety.

## **ARGUMENT**

## I. **PLAINTIFF HAS ADEQUATELY PLED WITH PARTICULARITY A CLAIM UNDER THE NEW JERSEY CONSUMER FRAUD ACT.**

Plaintiff's SAC provides detailed descriptions -- and copies -- of the specific affirmative misrepresentations to which Plaintiff was actually exposed.  Plaintiff details who provided these misrepresentations to her, when she was exposed to them, and in which specific documents they occurred.  Plaintiff has alleged she

was exposed to misrepresentations in documents beyond just her contract with
Defendant.  Plaintiff has provided ample factual support for her contention that
Defendant's representations to consumers, including the representations she was
personally exposed to, were false and deliberately misleading.  Plaintiff further
identifies knowing omissions made by Defendant, as supported by specific facts
from deposition testimony.  As such, she has adequately pled all necessary
elements of her NJCFA claim under the requirements of Fed. R. Civ. P. 9(b).

A.    **Legal Standard**

1.    **The New Jersey Consumer Fraud Act**

The NJCFA was "intended to be one of the strongest [consumer protection
laws] in the country."  *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641,
647 (D.N.J. 2013).  "The legislative history of the CFA reveals that, without
exception, it is remedial legislation and, as such, 'should be construed liberally.'"
*Smith v. Citimortgage, Inc.*, No. 15-7629, 2015 WL 12734793, at *6 (D.N.J. Dec.
22, 2015) (*quoting Harnish*, 931 F. Supp. at 647).

To state a claim under the NJCFA, a plaintiff need only allege facts
sufficient to demonstrate: "(1) unlawful conduct; (2) an ascertainable loss; and (3)
a causal relationship between the unlawful conduct and the ascertainable loss."
*Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011); N.J. Stat.
Ann. § 56:8-19.  Defendant does not contest that if Plaintiff has adequately pleaded

the first and third factors, she has adequately pleaded ascertainable loss, nor can it.

"Importantly, unlike common law fraud, the NJCFA does not require proof of reliance." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (emphasis added). Rather, a plaintiff "need only establish the causal nexus element" between the unlawful conduct and the ascertainable loss. *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008).

The NJCFA is "designed to address sharp practices and dealings . . . whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Smajlaj*, 782 F. Supp. 2d at 97 (citation and quotation omitted) (denying motion to dismiss). Courts thus recognize that a motion to dismiss a NJCFA claim must be approached "with hesitation." *See Dewey v. Volkswagen*, 558 F. Supp. 2d 505, 525 (D.N.J. 2008) (denying motion to dismiss).

The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J. Stat. Ann. § 56:8-2.

The NJCFA creates multiple categories of unlawful practices, including:

affirmative acts, knowing omissions, violations of state regulations, deception, and unconscionable commercial practices. *See Smajlaj*, 782 F. Supp. 2d at 97; *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 655 A.2d 417, 429 (N.J. 1995) (holding that "any unconscionable commercial practice" encompasses any commercial conduct that lacks "good faith, honest in fact and observance of fair dealing."); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) (same); *Skeer v. EMK Motors, Inc.*, 45 A.2d 508, 511 (N.J. Super. Ct. App. Div. 1982) (unconscionable commercial practices include "exorbitant prices, unfair bargaining advantages and incomplete disclosures.").

"In an action under the NJCFA, the test is whether the conduct of a defendant has the capacity to mislead the average consumer."  *New York Career Guidance Services, Inc. v. Wells Fargo Fin. Leasing, Inc.*, No. 1705-03, 2005 WL 1252315, at *5 (N.J. Super. Ct. Law Div. May 2, 2005) (collecting cases); *Cox,* 647 A.2d at 462 (unlawful conduct does not require a showing of knowledge and intent to deceive).  Whether a statement has the capacity to mislead consumers is a question of fact for the jury.  *See Leon v. Rite Aid Corp.*, 774 A.2d 674, 678 (N.J. Super. Ct. App. Div. 2001) ("Indeed, a jury would appear especially well suited to determine the impact of an advertisement upon 'an average consumer.'"); *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 126 (D.N.J. 2002) (denying motion to dismiss and holding that "[w]hether Defendants' actions or omissions

constituted an unconscionable commercial practice because [Defendant's]

disclosure has the capacity to mislead consumers . . . are clearly questions of fact

for a jury to answer.").

### 2. Federal Rule Of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all

factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint,

the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224,

233 (3d Cir. 2008) (affirming a denial of motion to dismiss) (quoting *Pinker v.

Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *cf. Bedi v. BMW of

North America, LLC*, No. 15-1898, 2016 WL 324950, at *6 (D.N.J. Jan. 27, 2016)

(denying motion to dismiss and holding that the "Court cannot weigh evidence at

this stage").  In order to survive a motion to dismiss, a party need only plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 570 (2007); *accord Iqbal v. Ashcroft*, 556 U.S. 662, 678

(2009) ("The plausibility standard is not akin to a 'probability requirement.'").

### 3. Federal Rule Of Civil Procedure 9(b)

As this Court previously held, for claims sounding in fraud, including

Plaintiff's NJCFA claim, "the plaintiff 'must meet a heightened pleading standard

under Federal Rule of Civil Procedure 9(b).'"  ECF No. 43 at 3, *quoting Zuniga v.

*Am. Home Mortg.*, No. 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016).

"The Third Circuit has stated that Rule 9(b) requires a plaintiff to state the circumstances of the alleged fraud with enough particularity so as to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Construcciones Haus Soceidad v. Kennedy Funding Inc.*, No. 07-392, 2008 WL 1882857, at *4 (D.N.J. Apr. 24, 2008) (quoting *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007)).  However, as Judge Simandle aptly explained in *Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC*, 417 F. Supp. 2d 632, 644 (D.N.J. 2006), "[parties] do not need to plead the 'date, place or time' of each alleged misrepresentation or each alleged fraudulent act performed to satisfy the requirements under Rule 9(b)."

"The most basic consideration in judging the sufficiency of a pleading [under Rule 9(b)] is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading."  *Harkes v. The Accessory Corp., Inc.*, No. 09-2556, 2010 WL 919616, at *5 (D.N.J. Mar. 10, 2010) (internal quotation omitted).  This is because "'[t]he purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged' in order to give them an opportunity to respond meaningfully to a complaint, 'and to prevent false or unsubstantiated charges.'"  *In re: Lamictal Indirect Purchaser and Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 738 (D.N.J. 2016) (quoting *Rolo v. City*

*Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998)); *see also Alves v. Verizon*, No. 08-3196, 2010 WL 2989988, at *12 (D.N.J. July 27, 2010) (same).

## B. Defendant Improperly Attempts To Insert A Reliance Requirement Into The NJCFA.

The Third Circuit has unequivocally held that, "unlike common law fraud, the NJCFA does not require proof of reliance." *Marcus*, 687 F.3d at 606 (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 691 A.2d 350, 366 (1997)). Yet, Defendant seeks to impose just such a reliance requirement with its argument that Plaintiff's claim be dismissed because she "[d]oes [n]ot [a]llege that [s]he [c]onsidered [a]ny [s]pecific [r]epresentation [w]hen [p]urchasing from Spark" and "does not allege any specific facts regarding what she saw or understood regarding her purchase." ECF No. 54-1 ("Def. Mem.") at 8-9. "This argument conflates the traditional formulation of reliance and causation under the NJCFA." *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008) ("The NJCFA 'does not require proof that a consumer has actually relied on a prohibited act in order to recover. In place of the traditional reliance element of fraud and misrepresentation, we have required that plaintiffs demonstrate that they have sustained an ascertainable loss.') (quoting *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 391, 929 A.2d 1076 (N.J. 2007)). Plaintiff has adequately alleged that Defendant made false and misleading representations to her, concealing the bait-and-switch scheme at

issue here -- the unlawful conduct -- and, because of Defendant's bait-and-switch scheme, she was charged exorbitant rates for her energy costs -- the causal nexus between Defendant's unlawful conduct and her ascertainable loss.

Simply put, Plaintiff is not required to allege the extent to which she considered or relied upon any of the specific misrepresentations that Defendant made to her. "Under the Act "[a] practice can be unlawful even if no person was in fact misled or deceived thereby." *Harnish v. Widener Univ. School of Law*, 921 F. Supp. 2d 641, 651 (D.N.J. 2013) (quoting *Cox*, 647 A.2d at 454).

### C.   Plaintiff Properly Alleges Unlawful Conduct By Defendant.

The Court has pointed to *Melville v. Spark Energy, Inc.*, No. 15-8706, 2016 WL 6775635 (D.N.J. Nov. 15, 2016) and *Vitale v. U.S. Gas & Electric, Inc.*, No. 14-4464, 2016 WL 1060807 (D.N.J. Mar. 16, 2016) as examples of adequately-pled NJCFA claims. Plaintiff's SAC clears the bar set by these cases, and describes Defendant's misrepresentations and omissions with enough particularity to satisfy Rule 9(b).

Just as in this case, the *Melville* plaintiffs alleged that "the [Customer Disclosure Statement and Terms of Service], the written agreement between Spark and customers, constituted an unlawful, deceptive, and unconscionable trade practice because it misrepresented that Spark charged for natural gas based on market rates." *Melville*, 2016 WL 6775635, at *3. There too, Defendant's

Customer Disclosure Statement and Terms of Service provide "that the flex-rate plan uses a rate that 'may vary according to market conditions,'" and the plaintiffs alleged "that rates charged by Spark were not market-based and, in support, list[ed] the rates charged by Spark in comparison to [local utility provider] PSE&G during" the relevant time period. *Id.*

Plaintiff has clearly done the same here, identifying the same actionable misrepresentations in the Customer Disclosure Statement and Terms of Service, and providing extensive detail on how Defendant's rates compare to PSE&G. *See* SAC ¶¶ 19, 26-27. The SAC then goes on to provide factual support on how its rates compare to other competing ESCOs (*id.* ¶ 34), admissions that it failed to set its "competitively priced" "variable market rate" according to market conditions or competitors' rates (*id.* ¶¶ 32-33), and details on Defendant's own rational (which is never disclosed to customers) for its inflated prices. *Id.* ¶ 35. The *Melville* court found that the plaintiffs had "proffered sufficient evidence to state a claim for relief under the NJCFA" with less detail and specificity than Plaintiff provides in the SAC. *Melville*, 2016 WL 6775635, at *3.

The Court directed Plaintiff to "set forth specific explanations and facts that satisfy the CFA's substantial aggravating circumstances requirement" beyond the language of her contract with Defendant. ECF No. 43 at 6, n.1. Plaintiff has done precisely this in the SAC. Like the *Melville* plaintiffs, Plaintiff "supplement[s]

[her] allegations regarding the [Customer Disclosure Statement] with contentions that Spark made [additional] representations." *Melville*, 2016 WL 6775635, at *3. The SAC both identifies and provides a copy of Defendant's standardized renewal notice, in which Defendant falsely represents to all customers that it provides "competitively priced" rates.  SAC, Exhibit 2.  The SAC describes at length how this representation is false and misleading, as well as how it aims to induce a reasonable consumer to transition to Defendant's over-priced variable rate plan. SAC ¶¶ 17-42.  In *Vitale*, the court denied defendants' motion to dismiss where plaintiffs provided direct quotes from a "telephone pitch" they were exposed to that "misled the [plaintiffs] as to the 'competitive' rates that they would pay. *Vitale*, 2016 WL 1060807, at *3.  Here, Plaintiff provides an extra-contractual written solicitation from Defendant that makes just such a misleading "competitive" claim and describes how such this claim is false and misleading. SAC ¶ 20, Exhibit 2.

Defendant's argument that the Court should rule, as a matter of law, that the representations in the renewal notice are mere puffery is belied by *Vitale*.  There, the court rejected defendant's argument that claims of "competitive" rates "constituted non-actionable sales 'puffery'" and held that a consumer exposed to such representations "could interpret 'competitive' to mean 'close to' the Utilities' rates.  If not, then why switch?" *Vitale*, 2016 WL 1060807, at *3.  Numerous

courts have likewise held that such language constitutes actionable false statements under state consumer protection laws.  *See, e.g., Yang Chen v. Hiko Energy, LLC*, No. 14-1771, 2014 WL 7389011, at *4 (S.D.N.Y. Dec. 29, 2014) (finding actionable misstatement where plaintiffs plausibly alleged that defendants' rates were not, in fact, "competitive" or reflective of the wholesale cost of electricity); *Wise v. Energy Plus Holdings LLC*, No. 11-7345, ECF No. 23 at 15-16 (S.D.N.Y. 2012) (holding that the plaintiff had alleged a violation of New York law for defendant's "competitive" claims because "plaintiffs have alleged that [defendant's] rates in fact are two to three times greater and . . . rise or remain steady during some periods when market prices decline"); *cf. Claridge v. N. Am. Power & Gas, LLC*, No. 15-1261, 2015 WL 5155934, at *5 (S.D.N.Y. Sept. 2, 2015) (finding actionable misstatement where defendant stated that variable rate "would approximate the market price," but failed to match the rate of other ESCOs).

Furthermore, the SAC provides ample factual support for Plaintiff's allegations that Defendant did not merely fail to deliver on the terms of its contract, but that it knew full well the representations it was making were false and misleading.  *See* SAC ¶ 32.  Defendant knows that its representations to Plaintiff and other customers that it will charge a "competitively priced" "variable market rate" that "may vary according to market conditions" is false and misleading

because it is fully aware it will be charging customers rates that are not based on market conditions.  *Id*. ¶¶ 32-36.

If Defendant had simply been unable to deliver on an earnest promise to provide a market-based rate, it would be guilty of a simple breach of contract, inappropriate for a NJCFA claim.  But Plaintiff has both adequately alleged and provided sufficient factual support to show that Defendant's business practices involve actively misrepresenting the nature of its plans and omitting key information regarding the same.  *See* SAC ¶¶ 17-42.  Such overarching "bad faith" and "lack of fair dealing" are precisely the sort of "substantial aggravating circumstance[s]" that can give rise to a NJCFA claim.  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 20 (1994) (cited by Defendant); *see also Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 655 A.2d 417, 429 (N.J. 1995) (holding that "any unconscionable commercial practice" encompasses any commercial conduct that lacks "good faith, honest in fact and observance of fair dealing.").



 *Accord*, *Hamlen v. Gateway Energy Services Corp.*, No. 16-3526, 2017 WL 6398729 (S.D.N.Y. Dec. 8, 2017) (denying motion to dismiss NJCFA claims and holding that where ESCO used "churn" as a significant factor in setting rates, but did not identify it as a factor in contract, plaintiff "plausibly alleges that the omission of churn from the Listed Factors, coupled with the representation that the rate would be 'based on market conditions,' rendered [defendant]'s statements deceptive because they had the capacity to mislead a reasonable consumer").

In addition, Defendant knowingly omits any information on the "administrative fees" that it charges customers under its variable rate plans, after affirmatively representing to these customers under the initial fixed-rate plan that they will pay nothing for such fees.  SAC ¶¶ 38-39.  Such "[a]n omission or failure to disclose a material fact, if accompanied by knowledge and intent, is sufficient to violate the CFA."  *Unique Custom Landscaping v. Sterman*, No. 13368-06, 2009 WL 2461171, at *4 (N.J.App.Div. Aug. 13, 2009); *see also Simonson v. Hertz*

*Corp.*, No. 10-1585,  2011 WL 1205584, at \*5-6 (D.N.J. Mar. 28, 2011) (denying

motion to dismiss NJCFA claim where plaintiff alleged he had been charged

undisclosed fees over defendant's argument that such fees were authorized by

contract).  Plaintiff has adequately alleged, based on testimony of Defendant's

Rule 30(b)(6) witness, that "Spark knows when it represents that no fee will be

charged absent a Customer Disclosure Statement or Electric Service Agreement

disclosure that it will in fact charge such a fee, irrespective of whether it is

disclosed."  SAC ¶ 39.  Defendant was obligated to provide an updated Customer

Disclosure Statement or Electronic Service Agreement to Plaintiff based on its

prior representations in the Terms of Service that the fee amount "is disclosed in

your CDS [Customer Disclosure Statement] or Electric Service Agreement,"  but

never did so.  SAC Exhibit 1 at 3, §1.  *See Francis  E. Parker Mem'l Home, Inc. v.*

*Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 560 (D.N.J. 2013) ("New Jersey law is

clear that a duty to disclose is implied where such disclosure is necessary to make a

previous statement true.") (citing *Lightning Lube v. Witco Corp.*, 4 F.3d 1153,

1185 (3d Cir.1993)).

Defendant attempts to justify its misrepresentation that Plaintiff owed no

monthly administrative fee and its knowing omission of the fact that it would begin

charging such a fee by sidestepping Plaintiff's allegations.  Def. Mem. At 16-17.

But while Defendant seeks to limit the issue to the fact that Defendant did not

charge Plaintiff an administration fee during the time she was on the fixed-rate plan, Plaintiff's allegations are focused on the transition to the variable-rate plan and Defendant's failure to ever inform her that it would begin charging this fee. The only contract Plaintiff received from Defendant stated that any applicable monthly administrative fee "is disclosed in your [Customer Disclosure Statement] or Electric Service Agreement."  SAC ¶ 38, Exhibit 1 at 3, § 1.  The only Customer Disclosure Statement she ever received from Defendant clearly lists "Monthly Administrative Fee: None."  *Id*. at ¶ 39, Exhibit 1 at 2.  As Defendant's argument concedes, nothing in the Customer Disclosure Statement and Terms of Service Plaintiff received contains any indication that there is a monthly administrative fee in any descriptions of the variable rate plans.  *Id*. at Exhibit 1.

It was not some clerical error that led to Plaintiff never receiving an updated Consumer Disclosure Statement or Electric Service Agreement.  As Defendant's own Rule 30(b)(6) witness testified, Defendant's standard course of business is to not send customers updated contracts when it switches them to a variable-rate plan. *Id.* at ¶ 39.  These facts provide more than enough support to render Plaintiff's claim plausible, and for a finder of fact to determine that Defendant knows when it represents that no fee will be charged absent a Customer Disclosure Statement or Electronic Service Agreement disclosure, it will, in fact, charge such a fee, irrespective of whether it is disclosed -- thereby affirmatively misrepresenting its

service terms to customers for the purpose of inducing their patronage.

Plaintiff has alleged, with sufficient specificity, that Defendant's corporate representatives who authored and sent her correspondence ("who"); made material misrepresentations that Defendant would charge her a market-based rate as well as actionable omissions ("what"); in the Customer Disclosure Statement and Terms and Conditions and in the separate, non-contractual renewal statement it sent to her ("where"); in February 2012 and March 2013, respectively ("when"); to induce her, like any other customer, to switch to its services ("why"); by means of these false and misleading statements and omissions ("how").  She has provided additional factual support for her claims that Defendant never intended to charge a market-based rate under its variable-rate plan -- that based on the testimony of its 30(b)(6) witness its standard practice all along would be to instead set her rate based on other factors and charge undisclosed fees -- yet knowingly represented that it would provide a "competitively priced" "variable market rate" that "may vary according to market conditions," to induce her patronage, rendering her claims more than merely conclusory.  Therefore, the SAC adequately pleads Plaintiff's NJCFA claim under the Rule 9(b) standard.

### D.  Plaintiff Properly Alleges A Causal Nexus Between Defendant's Price Gouging And Her Ascertainable Loss.

Price is the only differentiating factor between Defendant's services and the services of other ESCOs or PSE&G.  SAC ¶¶ 40-41.  "Electricity and gas are

commodities.  The consumer little knows or cares about their source or the factors that go into their wholesale pricing." *Vitale*, 2016 WL 1060807, at *3.  Plaintiff has adequately alleged that she was exposed to Defendant's multiple representations that it would provide her with a "competitive" rate, and its assurances that this rate would specifically "vary according to market conditions." SAC ¶¶ 18-20.  She has further alleged that these statements are meant to induce her to switch to Defendant's services, and that the statements have just that effect on a reasonable consumer.  *Id.* ¶¶ 21-23.  However, these representations are deliberately false and misleading, and they induce consumers to switch to plans that ultimately charge exorbitant rates, as she was charged, causing an ascertainable loss.  This causal nexus between Defendant's unlawful conduct and Plaintiff's ascertainable loss is all that is required for pleading a NJCFA claim.

That Defendant's misrepresentations were made in standardized written materials sent to Plaintiff and other customers, emphasizes the strength of the causal nexus in this case.  "Where the representations are in written and uniform materials presented to each prospective plaintiff, there is a presumption of causation in NJCFA cases." *Elias*, 252 F.R.D. at 249.

Unable to dispute the clear connection between cause -- the misrepresentations and omissions intended to induce customers to switch -- and effect -- customers being drastically overcharges them for electricity -- Defendant

instead quibbles over the SAC's descriptions of a "reasonable consumer." However in *Vitale*, which this Court and Defendant has pointed to as an exemplar case for NJCFA claims, the court specifically ruled that the plaintiffs' "allegations, from the point of view of the average consumer, are sufficient to state a claim of fraud or an unconscionable commercial practice." *Id*. at *4.  To the extent Defendant's argument demands a peak into Plaintiff's mind to lay out her considerations, it runs afoul of the Third Circuit's edict that "unlike common law fraud, the NJCFA does not require proof of reliance." *Marcus*, 687 F.3d at 606.

The cases Defendant cites to are inapposite, and provide a useful contrast. In *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 377 (D.N.J. 2015), the Court dismissed a NJCFA claim where "Plaintiffs [] allege[d] that they were exposed to Defendants' affirmative misrepresentations and were 'induced' to pay premium prices for Defendants' products, but do not allege specific times, dates, or places for these events . . . [nor] the specific [misrepresentations] to which they were exposed." *Id*.  However, Ms. Rolland has provided exactly this sort of specificity, laying out in detail that she was exposed to Defendant's misrepresentations in the Customer Disclosure Statement and Terms of Service in February 2012 and to the misrepresentations in the renewal notice in March 2013.[2]

---

[2] The other cases Defendant cites for the same proposition, *Crozier v. Johnson & Johnson Consumer Cos., Inc*., 901 F. Supp. 2d 494 (D.N.J. 2012), *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 08-1057, 2008 WL 5381227 (D.N.J.

Plaintiff has more-than-adequately alleged affirmative misrepresentations and knowing omissions by Defendant concerning the competitiveness and basis for its variable rates.  Defendant does not, and cannot, contest that, if her allegations are true, she has suffered an ascertainable loss through Defendant's over-priced plans.  There is a clear causal nexus between these two elements, as these misrepresentations are intended to, and do, lure customers into switching to Defendant's variable rate plans.  As such, Plaintiff has properly alleged all elements of her NJCFA claim, and Defendant's motion to dismiss this claim should be denied.

## II.   <u>PLAINTIFF HAS ALLEGED A MULTI-STATE CLASS.</u>

The SAC alleges a nationwide class consisting of "all Spark variable rate electricity customers from April 19, 2011 to the present."  SAC ¶ 50.  This

---

2008), and *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505 (D.N.J. 2008), were all cited by the *Mladenov* Court and are distinguishable for the same underlying reason -- in each case the plaintiffs failed to allege the specifics of where they were exposed to the misrepresentations at issue, whereas Ms. Rolland has detailed her exposure to Defendant's false and misleading claims.  *See Mladenov*, 124 F. Supp. 3d at 376-77 ("[T]o properly plead causation, a plaintiff cannot rely on legal conclusions that do not identify 'when statements were made or when the plaintiffs were exposed to the statements.'") (quoting *Torres-Hernandez*, 2008 WL 5381227, at *7); *id.* ("In *Dewey*, Plaintiffs . . . failed to allege, "when the statements were made or at what point -- if ever -- each Plaintiff was exposed to one or more of the statements.") (citing *Dewey*, 558 F. Supp. 2d at 526-27); *id.* ("Similarly, in *Crozier* . . . [t]he plaintiffs' inability to detail a specific instance in which they were exposed to a specific advertisement was fatal to their claim.") (citing *Crozier*, 901 F. Supp. 2d at 506).

definition does not contain a geographic limitation and covers all states in which

Defendant has breached its contractual obligations to customers based on a

variable rate for energy.  *Id*. ¶¶ 68-73.

Throughout this litigation, Plaintiff has repeatedly made clear that, while a

NJCFA claim is being brought on behalf of a New Jersey class, a multi-state class

is being brought with respect to Plaintiff's common law claims for breach of

contract and breach of implied covenant of good faith and fair dealing.[3]

Defendant's statement that Plaintiff only served New Jersey focused discovery

until recently is also false, as Defense counsel is well aware.  To the contrary, on

April 23, 2018, only one business day after the initial conference, Plaintiff served a

request for production seeking copies of each different customer agreement Spark

used in all states in which it does business.  As Plaintiff explained to Defense

counsel at the time,  including during the parties' June 1, 2018 meet and confer call

concerning Plaintiff's requests for production, there would be no basis for a

multistate class if the terms governing the setting of variable rates materially

---

[3] This point was made clear at the initial status conference, as well as in multiple
letters to the Court regarding discovery disputes over Plaintiff's discovery requests
(served six months ago on April 23, 2018) for information pertaining to a multi-
state class.  *See* the parties' joint letters to Judge Goodman, dated July 6, 2018,
September 10, 2018, and September 11, 2018.  Defendant cannot reasonably assert
that it was not placed on notice of Plaintiff's claims.  Indeed, in denying
Defendant's attempt to avoid multistate discovery, Magistrate Goodman repeatedly
expressed that all of the Plaintiff's complaints plead a nationwide class, including
the first filed on April 19, 2017.

differed in each state. Therefore, to avoid unnecessary discovery expense, Plaintiff

sought production of the contracts to confirm that the variable rate terms were the

same in all contracts. Unable to convince Defendant to comply with its discovery

obligations, on July 6, 2018, Plaintiff sought the assistance of Magistrate

Goodman, who, on August 21, 2018, and again on September 21, 2018, ordered

the production of exemplar contracts. Not surprisingly, every variable rate

provision in the contracts Defendant produced were materially the same, each

providing that the variable rate may vary "according to market conditions."

Despite these repeated representations, Defendant now asserts that "Plaintiff

actively confirms that she seeks only a New Jersey class." Def. Mem. at 18.

Defendant bases this assertion on the fact that Plaintiff alleges a claim under the

NJCFA and non-resident class members could not assert a claim under the NJCFA.

However, Plaintiff is not alleging a multi-state class under the NJCFA -- she is

alleging a multi-state class with respect to her common law contract claims. [4]

---

[4] Because Plaintiff is not seeking a multi-state class with respect to the NJCFA claim, the NJCFA cases cited by Defendant are not relevant. They are also distinguishable for other reasons. In affirming a grant of a summary judgment motion (and not a motion to dismiss), *Maniscalco v. Bro. Intern. (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013) merely held that, under a choice of law analysis, named plaintiffs from South Carolina could not allege a violation of the NJCFA were South Carolina had the most significant relationship to the case. That case did not address under what states' laws claims may be brought on behalf of putative class members. Similarly, in *Noble v. Samsung Elecs. Am., Inc.*, No. 15–3713, 2018 WL 801590, at *4 (D.N.J. Feb. 8, 2018), claims under the NJCFA were dismissed where there was an insufficient connection between New Jersey and

The class treatment with respect to the NJCFA and contract claims are different because, unlike certain consumer protection statutes, claims for breach of contract do not materially vary from state to state and, therefore, there are fewer obstacles to demonstrating commonality and predominance at the class certification stage. *See, e.g., In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013) (no predominance issue for nationwide class asserting claims for breach of contract under the laws of multiple states); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122-23 (9th Cir. 2017) (affirming certification of nationwide breach of contract class); *Boyko v. Am. Intern. Group, Inc.*, No. 08-2214, 2012 WL 1495372, at *9 (D.N.J. Apr. 26, 2012), *separate portion vacated in part on reconsideration*, 2012 WL 2132390 (D.N.J. June 12, 2012) ("The Court agrees with Plaintiff that the legal elements of a breach of contract claim are substantially similar in all fifty states, such that certification of the AIG Class as to the breach of contract claim is proper."); *see also Am. Airlines v. Wolens*, 513 U.S. 219, 233 n. 8 (1995) ("[C]ontract law is not at its core diverse, nonuniform, and

---

injuries suffered by the named plaintiffs (not putative class members). In *Morcom v. LG Elecs. USA, Inc*., No. 16-4833, 2017 WL 8784836, at *16 (D.N.J. Nov. 30, 2017), the court actually denied a motion to dismiss with respect to plaintiffs' common law claims, but dismissed the NJCFA claim of one of the named plaintiffs (not of a putative class member) whose claim was not sufficiently related to New Jersey.

confusing.").[5]  In fact, just today the Court in *Gonzales v. Agway Energy Services, LLC*, No. 18-00235, ECF No. 81 at *5 (N.D.N.Y. Oct. 22, 2018), in denying a motion to dismiss, held that a that a New York plaintiff has standing to represent a proposed class of New York and Pennsylvania electricity customers "[s]ince Pennsylvania shares the elements of a breach of contract claim with New York."

Defendant also argues that Plaintiff's multi-state class should be dismissed for failure to meet minimum pleading requirements.  This Court has already found that Plaintiff has adequately alleged claims for breach of contract and breach of the covenant of good faith and fair dealing.  *See* ECF No. 28 ¶¶ 3-4.  As set forth above, the elements of breach of contract do not vary from state to state.  *See, e.g.,*

---

[5] To this end, Defendant's reliance on *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 183 (3d Cir. 2014) is misplaced.  There, the Third Circuit affirmed the denial of class certification (and not a motion to dismiss) with respect to claims under multiple state consumer protection statutes where "[n]o effort has been made to demonstrate how Plaintiffs' claims of deception through overbilling could be proven under the statutes' varying elements of reliance, state of mind, and causation."  However, the Third Circuit made clear that "grouping, in general, may be a permissible approach to nationwide class action litigation."  *Grandalski*, 767 F.3d at 183.  Such a grouping would work where claims, such as common law contract claims, do not materially vary from state to state.  *Id.*  Moreover, the Court found, with respect to multi-state class actions, whether the laws of multiple states are sufficiently similar is a matter to be determined at the class certification stage.  *Id.* at 183-84.  Defendants also cite *Gray v. Bayer Corp.*, No. 08-4716, 2011 WL 2975768, at *7 (D.N.J. July 21, 2011), where a motion for class certification (and not a motion to dismiss) was denied with respect to consumer fraud claims because "significant variation exists among the consumer fraud laws of the various states."  In contrast, here, there is no significant variation between states with respect to claims for breach of contract.

*In re U.S. Foodservice*, 729 F.3d at 127; *Just Film*, 847 F.3d at 1122-23; *Boyko*, 2012 WL 1495372, at *9.  If the elements of a claim for breach of contract have been alleged under New Jersey law, they have also been alleged under the laws of all other states in which Defendant has breached a contract with a customer.  The cases cited by Defendant are inapposite because, in those cases, claims under various state consumer protection statutes were dismissed where the complaints failed to allege the differing elements of claims under each individual statute.[6] With respect to breach of contract claims, there are no differing elements, nor has Defendant suggested otherwise.

Nevertheless, to the extent the Court finds that the SAC does not properly allege a multi-state class, Plaintiff respectfully requests leave to amend.  *See* Fed. R. Civ. P. 15(a)(2) (providing that "[t]he court should freely give leave when justice so requires").

## III.   PLAINTIFF'S CLASS ALLEGATIONS SHOULD NOT BE DISMISSED OR STRICKEN.

In the alternative, Defendant asks that the Court either dismiss or strike Plaintiff's multi-class allegations, arguing that Plaintiff lacks standing to assert

---

[6] *See Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846, 2011 WL 2976839, at *17 (D.N.J. July 21, 2011); *In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig.,* No. 08-939, 2009 WL 2940081, at *13–14 (D.N.J. Sept. 11, 2009); *Kalow & Springnut, LLP v. Commence Corp.*, No. 07-3442, 2009 WL 44748, at *5 (D.N.J. Jan. 6, 2009).  Moreover, in each of these cases, claims were dismissed without prejudice or plaintiffs were granted leave to amend.

claims on behalf of class members whose individual claims may be subject to the laws of different states.  This branch of Defendant's motion should also be denied.

### A.   <u>The Requirements To Strike Allegations Have Not Been Satisfied.</u>

Defendant asks this Court to strike Plaintiff's class allegations under Rule 23(d)(1)(D).  That request should be denied.  Rule 23(d)(1)(D) provides that "[i]n conducting an action under this rule, the court may issue orders that: . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  "Motions to strike, however, are generally disfavored in this circuit at the motion to dismiss stage, and the Third Circuit has acknowledged that there are 'rare few [cases] where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'"  *Neuss v. Rubi Rose, LLC*, No. 16-2339, 2017 WL 2367056, at *10 (D.N.J. May 31, 2017) (Shipp, J.) (quoting *Landman & Funk PC v. Skinder–Strauss Assoc.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011)).  At the pleadings stage, Defendant cannot demonstrate, <u>as a matter of law</u>, that Plaintiff cannot establish the Rule 23 requirements to certify a multi-state class of Defendant's customers who have been harmed through similar breaches of contract.  Indeed, Defendant does not even argue that Plaintiff cannot meet the requirements of Rule 23.  Therefore, the class allegations should not be stricken.  *See, e.g., Merino v. Wells Fargo & Co.*, No. 16-7840, 2017 WL 3908670, at *3 (D.N.J. Sept. 6, 2017)

(denying motion to strike where, from the face of the complaint, it could not be determined as a matter of law that an alleged class could not be certified).[7]

### B. **Any Request To Strike Or Dismiss Is Premature.**[8]

Even if Defendant did raise a potentially meritorious issue regarding Plaintiff's ability to satisfy the requirements of Rule 23, in general, the courts within this Circuit do not dismiss or strike class allegations prior to the class certification stage.  "'[N]umerous cases in this District have emphatically denied

---

[7] To the extent Defendant seeks to strike the multi-state allegations under Rule 12(f), the motion must still be denied.  Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  However, no class allegations in the SAC are redundant, immaterial, impertinent, or scandalous.  Nor does Defendant assert that any class allegations are redundant, immaterial, impertinent, or scandalous.  For this reason, alone, Plaintiff's class allegations cannot be stricken under Rule 12(f). *See Cox v. Chrysler Group, LLC*, No. 14-7573, 2015 WL 5771400, at *16 (D.N.J. Sept. 30, 2015) (Shipp, J.); *Morris v. BMW of N.A., LLC*, No. 13-4980, 2014 WL 793550, at *11 (D.N.J. Feb. 26, 2014) (denying motion to strike nationwide class allegations under Rule 12(f)).  Even if the class allegations were redundant, immaterial, impertinent, or scandalous, the motion would still be denied "'unless it is clear that under no circumstances could the demand succeed.'" *Cox*, 2015 WL 5771400, at *16 (quoting *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 383 (S.D.N.Y. 2004)).  Defendant could not meet this burden because Plaintiff has Article III standing and claims of putative class members are not separately subject to such standing requirements.  *See* section III.C, *infra*.

[8] To the extent Defendant seeks the dismissal of Plaintiff's multi-state class allegations, "[a] motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction." *Neuss*, 2017 WL 2367056, at *3.  "A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists." *Id.*

requests to strike class allegations at the motion to dismiss stage as procedurally premature." *Cox*, 2015 WL 5771400, at *16 (quoting *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 707 (D.N.J. 2013)). *See also Q±Food LLC v. Mitsubishi Fuso Truck of Am., Inc.*, No. 14-6046, 2015 WL 4603678, at *7–8 (D.N.J. July 30, 2015) (Shipp, J.) (holding that "to strike the class allegations at this stage would be premature, and the Court's consideration of this issue is better suited for the class certification stage"); *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 460–61 (D.N.J. 2015) (denying motion to strike nationwide class allegations where determination of choice of law issues were premature); *In re Thalomid and Revlimid Antitrust Litig.*, No. 14-6997, 2015 WL 9589217, at *19-20 (D.N.J. Oct. 29, 2015) (denying motion to dismiss class claims as premature); *Fishman v. Gen. Elec. Co.*, No. 12-00585, 2013 WL 1845615, at *6 (D.N.J. Apr. 30, 2013) ("[A]ny request to strike the [nationwide] class allegations is premature at this stage of the proceedings.").

The fact that Defendant purports to challenge Plaintiff's standing to bring claims on behalf of putative class members injured in other states does not alter the conclusion that any determination of the issue must wait until the class certification stage. *See In re FieldTurf Artificial Turf Mktg. and Sales Practices Litig.*, No. 17-2779, 2018 WL 4188459, at *8 (D.N.J. Aug. 31, 2018) (Shipp, J.) ("The Court defers consideration of standing to pursue claims on behalf of absent class

members of the nationwide class and deems the inquiry premature and more appropriate for the class certification analysis."); *Hargrove v. Sleepy's, LLC*, No. 10-1138, 2010 WL 11492390, at *2 (D.N.J. Nov. 18, 2010) (denying motion to dismiss class claims under multiple states' laws as premature); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) ("But the class certification issues are, as they were in *Amchem*, 'logically antecedent' to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing.") (internal citation omitted).

This Court has specifically held that the issue of whether a named plaintiff has standing to allege a class consisting of members whose injuries may be subject to the laws of different states is not an issue of standing, but of predominance.  In *In re Fieldturf*, the Court found that citizenship of class members, itself, to be "immaterial."  *In re FieldTurf*, 2018 WL 4188459, at *8.  Rather, the true issue is "'whether questions of law or fact common to class members predominate over any questions affecting only individual members.'"  *Id.* (quoting *Ramirez v. STI Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J. Mar. 18, 2009)).  Without discovery, Defendant cannot assert that there can be no predominance with respect to a multi-state class alleging contract claims arising out of the same conduct. Indeed, because claims for breach of contract do not materially vary from state to state, courts certify nationwide classes with respect to contract claims.  *See, e.g., In*

*re U.S. Foodservice*, 729 F.3d at 127; *Just Film*, 847 F.3d at 1122-23; *Boyko*, 2012 WL 1495372, at *9.

Regardless, Plaintiff is not required to demonstrate predominance at the pleadings stage.  All she must do is plausibly allege that she is a member of an identified class, even if that class consists of putative members whose individual claims may be subject to the laws of different states.  *See In re FieldTurf*, 2018 WL 4188459, at *8.  Here, Plaintiff alleges a class of "all Spark variable rate electricity customers from April 19, 2011 to the present" and has alleged that she is a member of this defined class.  SAC ¶ 50.  Defendant cannot and does not dispute this point.

### C.   <u>Plaintiff Does Have Standing.</u>

Defendant asserts that Plaintiff lacks standing to allege a class with members whose claims may be subject to the laws of other states.  However, Defendant is confusing standing with issues of predominance.  Plaintiff has alleged a redressable injury to herself caused by Defendant.  That is all that is required for standing.  *See Ramirez*, 644 F. Supp. 2d at 504–05 (denying motion to dismiss multi-state class claims on standing grounds); *accord, Morrison v. YTB Intern., Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("Plaintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision. . . . Nothing more is required for standing.").  Plaintiff has overcome this minimal hurdle.  Indeed, this Court has already denied Defendant's

motion to dismiss Plaintiff's claims for breach of contract and breach of implied

covenant of good faith and fair dealing.  *See* ECF No. 28 ¶¶ 3-4.

"[A]s long as the named plaintiffs have standing to sue the named

defendants, any concern about whether it is proper for a class to include out-of-

state, nonparty class members with claims subject to different state laws is a

question of predominance under Rule 23(b)(3), not a question of 'adjudicatory

competence' under Article III."  *See Langan v. Johnson & Johnson Consumer*

*Companies, Inc.*, 897 F.3d 88, 93 (2d Cir. 2018) (internal citation omitted)

(concluding that "whether a plaintiff can bring a class action under the state laws

of multiple states is a question of predominance under Rule 23(b)(3), not a

question of standing under Article III").

Three Circuits have addressed this issue and all three concur that a plaintiff

may allege a multi-state class without running afoul of the standing requirements

of Article III.  *See Langan*, 897 F.3d at 95; *Morrison*, 649 F.3d at 536 ("If the

Illinois Consumer Fraud Act law does not apply because events were centered

outside Illinois, then plaintiffs must rely on some other state's law; this application

of choice-of-law principles has nothing to do with <u>standing</u>, though it may affect

whether a class should be certified -- for a class action arising under the consumer-

fraud laws of all 50 states may not be manageable, even though an action under

one state's law could be.") (emphasis in the original).  One week ago, the First

Circuit also came to this conclusion.  In In re Asacol Antitrust Li*tig.*, No. 18-1065, 2018 WL 4958856, at *4 (1st Cir. Oct. 15, 2018), the court held that: "Nothing in this precedent, though, suggests that the claims of the named plaintiffs must in all respects be identical to the claims of each class member.  Requiring that the claims of the class representative be in all respects identical to those of each class member in order to establish standing would 'confuse[ ] the requirements of Article III and Rule 23.'" (internal citations omitted).  "Indeed, such an approach would render superfluous the Rule 23 commonality and predominance requirements because any case that survived such a strict Article III analysis would by definition present only common issues." *Id.*

*Langan* provided further explanation of why plaintiffs have standing, regardless of whether laws of different states may apply to claims of putative class members:

> The doctrine of standing tests whether a prospective litigant may properly invoke the power of the federal courts. The standing requirement acknowledges that not all injuries can be remedied by courts, and that even some injuries that could are the responsibility of the political branches instead. To avoid giving advisory opinions, we require that parties that come before us have a sufficient stake in the outcome of the case to render it a case or controversy.

> Class actions under Rule 23 of the Federal Rules of Civil Procedure are an exception to the general rule that one person cannot litigate injuries on behalf of another. Through Rule 23, Congress has authorized plaintiffs to bring, under limited circumstances, a suit in federal court on behalf of, not just themselves, but others who were similarly injured. Such suits result in efficiencies of cost, time, and judicial resources and

permit a collective recovery where obtaining individual judgments might not be economically feasible. Although a named class action plaintiff has not actually suffered the injuries suffered by her putative class members (and therefore would not normally have standing to bring those suits), Congress has said that the fact that the parties "possess the same interest" and "suffer[ed] the same injury" gives the named plaintiff a sufficient stake in the outcome of her putative class members' cases.

*Langan*, 897 F.3d at 93-94 (internal citations omitted). Further, "[s]ince class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place." *Id.* at 95.

Courts within this District have come to this same conclusion. *See, e.g., In re Thalomid and Revlimid*, 2015 WL 9589217, at *18–19 (denying motion to dismiss multi-state class allegations on standing grounds); *Ramirez*, 644 F. Supp. 2d at 504-05 ("Defendants' argument appears to conflate the issue of whether the named Plaintiffs have standing to bring their individual claims with the secondary issue of whether they can meet the requirements to certify a class under Rule 23").

Although the Third Circuit has not directly addressed this issue, this conclusion is entirely consistent with this Circuit's precedent. "[O]ur precedent provides that "variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and

predominance." *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 301 (3d Cir. 2011) (en banc) (citation omitted).  This is so because "'a finding of commonality does not require that all class members share identical claims,' and predominance is not considered deficient merely 'because claims were subject to the [varying] laws of fifty states.'" *Id*. (citation omitted).  The Third Circuit "ha[s] never required the presentation of identical or uniform issues or claims as a prerequisite to certification of a class.  Rather, our jurisprudence evinces a pragmatic response to certifications of common claims arising under varying state laws." *Id*. [9]

For all these reasons, Plaintiff does have standing, the multi-class allegations should not be dismissed or stricken, and any concerns on whether common issues

---

[9] The cases cited by Defendants are not on point.  In *Chan v. Daimler AG*, No. 11-5391, 2012 WL 5827448, at *11 (D.N.J. Nov. 9, 2012), the court found that the named plaintiffs did not have standing to bring claims on their own behalf and did not address whether there was standing to assert claims on behalf of putative class members. Similarly, in *Nirmul v. BMW of N.A., LLC*, No. 10-5586, 2011 WL 5195801, at *5 (D.N.J. Oct. 31, 2011), because there was an insufficient connection between the alleged claims and the state of New Jersey, the named plaintiffs' individual claims under the NJCFA were dismissed and the court did not address their class claims.  In *In re Flonase Antitrust Litig*., 610 F. Supp. 2d 409, 418 (E.D. Pa. 2009), too, the named plaintiffs' individual claims were dismissed because they brought claims under consumer protection statutes of states with an insufficient connection to the underlying allegations.  All these cases involved the named plaintiffs' standing to bring their own individual claims, not class claims. Further, in *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 332 (D.N.J. 2014), the parties did not dispute the scope of the classes at issue and, in *dicta*, the court merely stated that persons injured outside of New Jersey could not bring claims under the NJCFA.

of fact and law pertaining to breach of contract claims under the laws of different states predominate are best left for a future motion for class certification, after the parties have the opportunity to engage in discovery.[10]

## <u>CONCLUSION</u>

For all the aforementioned reasons, Plaintiff respectfully request that the Court deny the motion in its entirety and grant such other relief as the Court deems just and proper.  To the extent any claims are dismissed, Plaintiff respectfully requests leave to amend.

Dated: October 22, 2018

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Matthew R. Mendelsohn*
Matthew R. Mendelsohn
MAZIE SLATER KATZ & FREEMAN LLC
103 Eisenhower Parkway
Roseland, NJ 07068

</div>

---

[10] Defendant explicitly states that, in the present motion, it is not seeking dismissal of Plaintiff's class claims on jurisdictional grounds.  *See* Def. Mem. at 20 n.4. However, Defendant implies that there may be no personal jurisdiction over claims of class members from different states.  This is incorrect.  *See, e.g., Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, No. 17-564, 2017 WL 4224723, at *4–6 (N.D. Cal. Sept. 22, 2017) (denying motion to strike class claims on jurisdictional grounds under *Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco County*, 137 S. Ct. 1773 (2017)); *In re Chinese-Manufactured Drywall Products Liab. Litig.*, No. 09-2047, 2017 WL 5971622, at *12-13 (E.D. La. Nov. 30, 2017) (*Bristol-Myers Squibb* inapplicable to class actions).

D. Greg Blankinship
Todd S. Garber
Chantal Khalil
FINKELSTEIN, BLANKENSHIP,
FREI-PEARSON & GARBER, LLP
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
*Counsel for Plaintiff and Putative Class*