**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JANET ROLLAND,

        Plaintiff,

v.

SPARK ENERGY, LLC,

        Defendant.

Civil Action No. 17-2680 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Defendant Spark Energy, LLC's ("Defendant") Third Motion to Dismiss and Motion to Strike Class Allegations. (ECF No. 54.) Plaintiff Janet Rolland ("Plaintiff") filed a Second Amended Complaint ("SAC") on August 17, 2018. (ECF No. 48.) Plaintiff opposed Defendant's Motion (ECF No. 59), and Defendant replied (ECF No. 67).[1] The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion.

---

[1] The Court permitted Plaintiff and Defendant to submit a sur-reply and sur-sur-reply, respectively, but reserved on its decision as to whether it would consider the arguments advanced in that correspondence. (ECF Nos. 68, 69, 70, 71, 72, 73.) The Court hereby grants Plaintiff's and Defendant's Motions to submit a sur-reply and sur-sur-reply. (ECF Nos. 71, 72.) Further, the Court acknowledges receipt of the notices of supplemental authority (ECF Nos. 77, 79), and the responses thereto (ECF Nos. 78, 80).

I. **Background**[2]

The parties are familiar with the matter's factual history, and therefore, the Court only repeats those facts necessary to resolve the instant motion. Plaintiff enrolled in Defendant's electricity services from February 25, 2012 to December 24, 2014. (SAC ¶¶ 7, 24.) Defendant offered a twelve-month low, fixed-rate for new customers. (*Id.* ¶¶ 2, 17.) After twelve billing cycles, Defendant placed Plaintiff on a month-to-month variable rate plan ("Variable Rate Plan"). (*Id.* ¶ 17.) Defendant notified Plaintiff before the last billing cycle that her initial fixed-rate services were ending and she would be automatically enrolled in the Variable Rate Plan if she did not terminate her service. (*Id.* ¶ 20.) Plaintiff did not respond and was automatically enrolled into the Variable Rate Plan. (*Id.*) The price of the Variable Rate Plan was higher than the initial fixed rate. (*Id.* ¶¶ 17-31.) According to Plaintiff, the variable rate jumped 108% from the introductory fixed rate at the end of the first billing cycle, and Defendant's prices were 93% to 114% higher than competitors' rates. (*Id.* ¶ 24.)

Defendant moves to dismiss Count One of Plaintiff's SAC. (*Id.* ¶¶ 54-66.) Plaintiff filed two previous complaints (ECF Nos. 30, 48) after this Court granted Defendant's Motions to Dismiss without prejudice (ECF Nos. 28, 44). The Court denied Defendant's original Motion to Dismiss Plaintiff's breach of contract and breach of implied covenant of good faith and fair dealing claims. (First Mot. to Dismiss, ECF No. 28.) The Court, however, granted Defendant's Motion to Dismiss Plaintiff's New Jersey Consumer Fraud Act ("NJCFA") claim, finding Plaintiff did not satisfy Federal Rule of Civil Procedure[3] 9(b)'s pleading standards as to the NJCFA. (Dec. 7, 2017

---

[2] For purposes of the instant motion, the Court accepts all well-pled factual allegations in the Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[3] Unless otherwise noted, all references to "Rules" hereinafter refer to Federal Rules of Civil Procedure.

2

Hr'g Tr. 6:7-12, ECF No. 34.) Specifically, the Court cited to *Melville v. Spark Energy, Inc.*, No. 15-8706, 2016 WL 6775635 (D.N.J. Nov. 15, 2016), and *Vitale v. U.S. Gas & Electric, Inc.*, No. 14-4464, 2016 WL 1060807 (D.N.J. Mar. 16, 2016), as setting the appropriate pleading standard, and provided Plaintiff leave to file an amended complaint. (*Id.* at 5:23-6:12.)

Plaintiff subsequently filed an Amended Complaint. (ECF No. 30.) Defendant moved to dismiss, arguing Plaintiff failed to satisfactorily plead an NJCFA claim. (Second Mot. to Dismiss 8-13, ECF No. 37.) In its July 11, 2018 Memorandum Opinion, the Court granted Defendant's motion, finding Plaintiff again failed to provide sufficiently detailed allegations to plead an NJCFA claim. (July 11, 2018 Mem. Op. 6, ECF No. 43.) The Court further reiterated its prior determination that *Melville* and *Vitale* set forth the proper NJCFA pleading standard, and found Plaintiff's Amended Complaint failed to "allege that Plaintiff purchased electricity through Defendant based on any specific representation(s), or that price was considered by *Plaintiff* when purchasing from Defendant." (*Id.* at 5-6.) The Court granted Plaintiff one final opportunity to cure the deficiencies in her Amended Complaint. (*Id.* at 7.)

Plaintiff subsequently filed the SAC. (*See generally* SAC.) Currently before the Court is Defendant's third Motion to Dismiss Plaintiff's NJCFA claim. (*See* Def.'s Moving Br., ECF No. 54-1.) Defendant moves to dismiss with prejudice Plaintiff's NJCFA claim, and further moves to dismiss or strike Plaintiff's nationwide class allegations. (*Id.*)

## II. Legal Standard

When analyzing a Rule 12(b)(6) motion, the district court conducts a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the

3

plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* at 210-11. Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). "[W]here the well-pleaded facts do not permit the court to infer more than mere possibility of misconduct," the claim is insufficient. *Iqbal*, 556 U.S. at 679.

Where a plaintiff pleads fraud, however, the plaintiff "must meet a heightened pleading standard under [Rule] 9(b)." *Zuniga v. Am. Home Mortg.*, No. 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016). The NJCFA is subject to the heightened standard of Rule 9(b). *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 (D.N.J. 2011) (citing *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876-77 (3d Cir. 1994)). "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). The purpose of Rule 9(b) is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of . . . fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

4

A plaintiff seeking a claim under the NJCFA must present evidence of: (1) unlawful conduct; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Melville*, 2016 WL 6775635, at *2 (citing *Int'l Union of Operating Eng'gs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007)); *see also* N.J.S.A. 56:8-19. Unlawful conduct includes, "any unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate . . . ." N.J.S.A. 56:8-2. A plaintiff must allege "substantial aggravating circumstances" to state a valid NJCFA claim. *Neuss v. Rubi Rose, LLC*, No. 16-2339, 2017 WL 2367056, at *7 (D.N.J. May 31, 2017) (citation omitted).

Finally, under Rule 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, the party seeking to invoke the court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### III. Analysis

#### A. Plaintiff's NJCFA Claim

Defendant asserts that Plaintiff's SAC does not address the inadequacies from the prior dismissed complaints. (Def.'s Moving Br. 4.) Defendant contends Plaintiff failed to plead the third element of an NJCFA claim—a causal nexus between her injury and Defendant's allegedly unlawful conduct. (*Id.* at 8 (citing *Arcand v. Bro. Int'l Corp.*, 673 F. Supp. 2d 282, 303 (D.N.J. 2009)).) Specifically, Defendant contends, "Plaintiff fails to state that she . . . read, reviewed, looked at, or relied on the Terms of Service or the Renewal Notice. Instead, Plaintiff pleads she merely 'received' or was 'provided' those documents . . . ." (*Id.* at 9 (emphasis removed).)

5

Defendant also argues Plaintiff again failed to allege that she considered price when she purchased services from Defendant, and instead, continues to "resort only to the considerations of a 'reasonable consumer'—an attempt the Court specifically rejected." (*Id.* at 10 (citing July 11, 2018 Mem. Op. 6 ("Plaintiff's Amended Complaint does not allege that Plaintiff purchased electricity through Defendant based on any specific representation(s), or that price was considered by *Plaintiff* when purchasing from Defendant.")).) Thus, Defendant contends that although "Plaintiff speculates about what the platitudinal 'reasonable consumer' would think and do, she does not state facts—let alone particularized facts—of a representation that caused *her* to roll over to a [V]ariable [R]ate [Plan] and to stay there." (*Id.* at 11.)

Moreover, Defendant contends Plaintiff failed to allege any misrepresentation or omission on behalf of Defendant. (*Id.* at 12.) Rather, Defendant argues "Plaintiff simply points to additional language in the Terms and Conditions that an administrative fee would not be included in the fixed rate—an allegation that has nothing to do with her variable-rate allegations." (*Id.* at 13.) Defendant disputes Plaintiff's statement that Defendant's use of the terms "competitively priced" amounts to a misrepresentation of the Variable Rate Plan. (*Id.* at 14.) Instead, Defendant alleges this phrase is merely "puffery," which this Court has previously found as not actionable under the NJCFA. (*Id.* (citing *Urbino v. Ambit Energy Holdings, LLC*, No. 14-5184, 2015 WL 4510201, at *5 n.7 (D.N.J. July 24, 2015) ("[C]laims of 'substantial savings,' 'low, competitive rates,' 'exceptional value,' and 'great savings' are not factual assertions. As such, they are not actionable under the [NJ]CFA.")).)

Finally, Defendant contends Plaintiff has not pled substantial aggravating circumstances sufficient to constitute consumer fraud under the NJCFA. (*Id.* at 15.) *See Hassler v. Sovereign Bank*, 374 F. App'x 341, 344 (3d Cir. 2010) (quoting *Turf Lawnmower Repair, Inc. v. Bergen*

6

*Record Corp.*, 655 A.2d 417, 429 (N.J. 1995) ("To constitute consumer fraud . . . the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer . . . .")); *see also Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997) (differentiating between mere breach of contract or warranty and an NJCFA violation). Thus, Defendant contends, "No basis exists to morph the breach of contract claim . . . into a treble-damages [NJ]CFA claim." (*Id.* at 16.)

This Court previously identified *Melville* and *Vitale* as providing the appropriate NJCFA pleading standard. (July 11, 2018 Mem. Op. 5 (citing *Melville*, 2016 WL 6775635; *Vitale*, 2016 WL 1060807.) In *Melville*, the plaintiff took the agreement into consideration when he read and reviewed the terms. *Melville*, 2016 WL 6775635, at *1. The *Melville* court also stated that "as with common law and equitable fraud, an NJCFA violation must be pled with particularity" and held that the plaintiff satisfied the Rule 9(b) standard because the plaintiff attached the agreement and referenced a specific encounter between the defendant and the plaintiff. *Id.* at *4.

In *Vitale*, the plaintiffs claimed the defendant told them, and provided them with documentation, that stated the rates were "competitive" when the plaintiffs switched to the defendant's services. *Vitale*, 2016 WL 1060807, at *1. Further, the plaintiffs directly quoted the standardized telephone sales pitch that induced them to switch electricity providers. *Id.* at *3. There, the court held the plaintiffs satisfied the NJCFA pleading requirements because the plaintiffs demonstrated the specific misleading statements that they considered, which induced them to switch to the defendant's services. *Id.*

In the instant matter, Plaintiff again fails to allege that she considered any of Defendant's representations when she purchased Defendant's electricity services. "To properly plead a causal nexus, a plaintiff cannot rely on legal conclusions that fail to allege when statements were made

7

or when the plaintiff[] [was] exposed to the statements." *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 08-1057, 2008 WL 5381227, at *7 (D.N.J. Dec. 17, 2008) (citation omitted). Here, although Plaintiff attached the Terms of Service and Renewal Notice to her SAC, Plaintiff did not plead any facts demonstrating that she saw, read, heard, or in any way took those documents into consideration. (*See* SAC, Ex. 1; SAC, Ex. 2.) In fact, Plaintiff merely alleges that she "received" Defendant's Renewal Notice, and Defendant "provided her" its Terms of Service. (SAC ¶¶ 18, 20.) Therefore, Plaintiff failed to establish the Terms of Service and Renewal Notice were material to her decision making, but instead, pleads pursuant to a reasonable consumer, which the Court has already rejected. (*See* July 11, 2018 Op. 5-6 (collecting cases); *see also id.* at 6.) *See also Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 377 (D.N.J. 2015) (finding the plaintiffs failed to plead an NJCFA claim with sufficient particularity because, among other things, the "[p]laintiffs [did] not specify any instance in which they even saw [the d]efendant's advertisements"); *Berman v. ADT LLC*, No. 12-7705, 2015 WL 4496517, at *5 (D.N.J. July 22, 2015) (finding the plaintiffs failed to successfully plead an NJCFA claim because the record lacked evidence that the defendants' representations were "material to [the plaintiffs'] decision-making").

The Court is also not persuaded by Plaintiff's assertion that Defendant's use of the phrase "competitively priced offers" in the Renewal Notice constitutes a misrepresentation. (SAC, Ex. 2.) This Court has previously determined, "claims of 'substantial savings,' 'low, competitive rates,' 'exceptional value,' and 'great savings' are not factual assertions. As such, [those phrases] are not actionable under the [NJ]CFA." *Urbino*, 2015 WL 4510201, at *5 n.7 (citation omitted); *see also Glass v. BMW of N. Am.*, No. 10-5259, 2011 WL 6887721, at *6 (D.N.J. Dec. 29, 2011) (citation omitted) ("Advertising that amounts to mere puffery is not actionable because no reasonable consumer relies on puffery. The distinguishing characteristics of puffery are vague,

8

highly subjective claims, as opposed to specific, detailed factual assertions."); *Berman*, 2015 WL 4496517, at *5 (alteration in original) (internal quotation marks and citation omitted) ("[I]dle comments or mere puffery are not material because reasonable consumers do not rely on puffery."). Here, Defendant's assertion that its rates were competitively priced falls squarely into the category of puffery. Nonetheless, as stated previously, Plaintiff failed to plead that she read or considered the Renewal Notice, and therefore, has not demonstrated that she even took the phrase "competitively priced" into consideration.[4]

### B. Plaintiff's Multistate Class Allegations

Defendant next argues the SAC fails to support a multistate class. Specifically, Defendant moves to dismiss Plaintiff's class allegations pursuant to Rules 12(b)(1), 12(b)(6), or 23(d)(1)(D). (Def.'s Moving Br. 17-21.)

Plaintiff's class definition does not include a geographic limitation, *i.e.* New Jersey, but rather, Plaintiff brings the suit "on behalf of a class of consumers who purchased electricity on a variable rate from Defendant from April 19, 2011, to present." (SAC ¶ 6.) Plaintiff further provides that Defendant "has thousands of customers in New Jersey and elsewhere," and operates in "New Jersey and other states." (SAC ¶ 8.) Although the Court recognizes Plaintiff's nationwide class allegations are limited, Plaintiff's allegations are sufficiently broad to encompass a class outside of the State of New Jersey.

---

[4] Plaintiff's arguments regarding the Administrative Fee lack merit as the Terms of Service provides that fixed rate plan customers will not pay an administrative fee, and Plaintiff does not allege that she paid an administrative fee during the time she was enrolled in the fixed rate plan. (SAC, Ex. 1; *see also* SAC ¶ 39 (stating Plaintiff began paying an administrative fee after switching to the Variable Rate Plan).)

Moreover, the Court is not inclined to dismiss or strike Plaintiff's class allegations at the motion to dismiss stage, and finds this issue better suited for the class certification stage.[5] *See Rubi Rose, LLC*, 2017 WL 2367056, at *10 ("[S]trik[ing] . . . class allegations at [the motion to dismiss] stage would be premature, and the Court's consideration of this issue is better suited for the class certification stage."); *see also Durso v. Samsung Elecs. Am., Inc.*, No. 12-5352, 2013 WL 5947005, at *13 (D.N.J. Nov. 6, 2013) (citation omitted) ("Dismissal of class claims prior to discovery and a motion to certify the class by plaintiff is the exception rather than the rule."); *Fishman v. Gen. Elec. Co.*, No. 12-585, 2013 WL 1845615, at *6 (D.N.J. Apr. 30, 2013) (explaining that a motion to strike under Rule 12(f), rather than a motion to dismiss under Rule 12(b)(6), is the "proper procedural mechanism" for disputing nationwide class allegations, and finding the defendant's motion premature at the motion to dismiss stage); *cf. Bell v. Cheswick Generating Station*, No. 12-929, 2015 WL 401443, at *5-7 (W.D. Pa. Jan. 28, 2015) (reviewing the defendant's motion brought pursuant to Rules 12(b) and 23(c)(1)(A) as a motion to strike class allegations). The Court, accordingly, denies Defendant's motion to dismiss or strike Plaintiff's nationwide class allegations.[6]

---

[5] The Court acknowledges that "[c]ourts are divided on the question of the appropriate standard of review for pre-discovery motions to strike class allegations . . . ." *Bell v. Cheswick Generating Station*, No. 12-929, 2015 WL 401443, at *3 (W.D. Pa. Jan. 28, 2015) (collecting cases). Here, the Court finds Defendant's motion premature, and therefore, does not reach the issue.

[6] The Court further finds Defendant's standing argument unpersuasive. *See, e.g., Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 96 (2d Cir. 2018) ("[W]hether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing . . . .").

## IV. Conclusion

For the reasons set forth above, the Court dismisses with prejudice Plaintiff's NJCFA claim. The Court denies Defendant's Motion to Strike Plaintiff's nationwide class. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** April 29, 2019