# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

JANET ROLLAND and MICHAEL HARTY, individually and on behalf of all others similarly situated,

                Plaintiffs,

      v.

SPARK ENERGY, LLC,

                Defendant.

No. 3:17-CV-02680-MAS-LHG

No. 3:19-CV-14114-MAS-LHG

---

# PLAINTIFFS' BRIEF IN OPPOSITION
# TO DEFENDANT'S FOURTH MOTION FOR PARTIAL
# <u>DISMISSAL, AS TO ALL OF MICHAEL HARTY'S CLAIMS</u>

---

Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068

D. Greg Blankinship
Todd S. Garber
Chantal Khalil
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
445 Hamilton Avenue,
Suite 605
White Plains, NY 10601

Richard R Gordon
**GORDON LAW OFFICES, LTD.**
111 W. Washington Ave
Suite 1240
Chicago, IL 60602

*Attorneys for Plaintiff and the Putative Class*

## <u>TABLE OF CONTENTS</u>

Table Of Authorities ................................................................................. ii

Introduction ........................................................................................... 1

Relevant Background .............................................................................. 3

Argument................................................................................................ 4

     I.    Plaintiffs Need Only Plead Factual
         Allegations Rendering Their Claims Plausible. ....................................4

     II.   Harty Properly Pleads Timely Claims Under Each Cause Of Action. .7

     III.  Harty Properly Pleads His ICFA Claim. .............................................11

         A.    Defendant Committed Deceptive Acts. ....................................11

         B.    Defendant's Fraud Was The
              Proximate Cause Of Harty's Injury. .........................................17

         C.    Defendant Violated The
              ICFA By Engaging In Unfair Conduct. ....................................21

     IV.  Harty Properly Pleads His Breach Of Contract Claim.......................27

         A.    This Court Has Already Ruled That
              There Is A Plausible Breach Of Contract
              Claim Based Defendant's Failure To Charge
              A Rate That "May Vary According To Market Conditions." ..27

         B.    Harty Properly Pleads A Breach Of
              Contract Based On Defendant Charging
              An Undisclosed Monthly Administrative Fee. .........................36

     V.   Defendant Owed A Duty Of Good Faith
         And Fair Dealing To Harty And All Illinois Customers.....................38

Conclusion .......................................................................................40

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson News, L.L.C. v. American Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ................................................................5, 6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................32

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   216 Ill.2d 100, 835 N.E.2d 801 (Ill. 2005) ...........................................19

*Barbara's Sales, Inc. v. Intel Corp.*,
   227 Ill. 2d 45, 879 N.E. 2d 910 (Ill. 2007) ...........................................20

*Beatty v. Accident Fund Gen. Ins. Co.*,
   No. 17-1001, 2018 WL 3219936 (S.D. Ill. July 2, 2018).....................22

*Bedi v. BMW of North America, LLC*,
   No. 15-1898, 2016 WL 324950 (D. N.J. Jan. 27, 2016) ........................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................5

*Bell Enters. Venture v. Santanna Natural Gas Corp.*,
   No. 01-2212, 2001 WL 1609417 (N.D. Ill. Dec. 12, 2001) ...........13, 19

*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
   199 Ill. 2d 325, 770 N.E. 2d 177 (Ill. 2002) ...........................................9

*Blankenship v. Pushpin Holdings, LLC*,
   157 F. Supp. 3d 788 (N.D. Ill. 2016)......................................................10

*Block v. Lifeway Foods, Inc.*,
   No. 17-1717, 2017 WL 3895565 (N.D. Ill. Sept. 6, 2017)....................12

*Boyle v. County of Allegheny Pennsylvania*,
   139 F.3d 386 (3d Cir. 1998) ...................................................................32

*Budzash v. Howell Tp.*,
   451 Fed. App'x. 106 (3d Cir. 2011) .........................................................7

*Chen v. Hiko Energy, LLC*,
   No. 14-1771, 2014 WL 7389011 (S.D.N.Y. Dec. 29, 2014)............16, 31

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)........................28

ii

*Christidis v. First Penn. Mtg. Trust,*
 717 F.2d 96 (3d Cir. 1983) ................................................................. 6

*Claridge v. N. Am. Power & Gas, LLC*, No.,
 15-1261, 2015 WL 5155934 (S.D.N.Y. Sept. 2, 2015) ................................. 16, 31

*Clark v. Prudential Ins. Co. of Am.,*
 736 F. Supp. 2d 902 (3d Cir. 2010) ..................................................... 7

*Clark v. Robert W. Baird Co., Inc.,*
 152 F. Supp. 2d 1040 (N.D. Ill. 2001) ................................................... 10

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.,*
 887 F.3d 803 (7th Cir. 2018) .......................................................... 17, 19

*Coda v. Constellation Energy Power Choice, LLC,*
 No. 17-3437, 2019 WL 4024807 (D. N.J. Aug. 27, 2019) ................................ 34

*Connick v. Suzuki Motor Co., Ltd.,*
 174 Ill. 2d 482, 675 N.E. 2d 584 (Ill. 1996) ........................................... 17

*Construcciones Haus Soceidad v. Kennedy Funding Inc.,*
 No. 07-392, 2008 WL 1882857 (D. N.J. Apr. 24, 2008) ................................. 6

*Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.,*
 250 F.3d 570 (7th Cir. 2001) ........................................................... 17

*Deere & Co. v. AGCO Corp.,*
 No. 18-827, 2019 WL 668492 (D. Del. Feb. 19, 2019) .................................. 5

*Devcon Intern. Corp. v. Reliance Ins. Co.,*
 609 F.3d 214 (3d Cir. 2010) .......................................................... 33, 37

*Doherty v. The Hertz Corp.,*
 No. 10-359, 2010 WL 4883487 (D. N.J. 2010) ......................................... 37

*Donnenfeld v. Petro, Inc.,*
 No. 17-2310, 2018 WL 4356727 (E.D.N.Y. Sept. 12, 2018) ............................ 16

*Edson v. Fogarty,*
 2019 IL App (1st) 181135 (Ill. App. Ct. 2019) ......................................... 18

*Edwards v. N. Am. Power & Gas, LLC,*
 120 F. Supp. 3d 132 (D. Conn. 2015) .................................................. 16

*Forte v. Direct Energy Servs., LLC,*
 No. 17-264, 2017 WL 3495861 (N.D.N.Y. Aug. 14, 2017) .............................. 16

*Frederico v. Home Depot,*
 507 F.3d 188 (3d Cir. 2007) ........................................................... 6

*Gonzales v. Agway Energy Services, LLC,*
 No. 18-235, 2018 WL 5118509 (N.D.N.Y. Oct. 22, 2018) .............................. 16

iii

*Gore v. Ind. Ins. Co.*,
   376 Ill. App. 3d 282, 876 N.E.2d 156 (Ill. App. Ct. 2007) ...................................38

*Greenberger v. GEICO Gen. Ins. Co.*,
   631 F.3d 393 (7th Cir. 2011) ...................................................................................17

*Hamlen v. Gateway Energy Servs. Corp.*,
   No. 16-3526, 2017 WL 6398729 (S.D.N.Y. Dec. 8, 2017)......................................16

*Haywood v. Massage Envy Franchising, LLC*,
   887 F.3d 329 (7th Cir. 2018) ...................................................................................20

*Hendrix v. City of Yazoo City*,
   911 F.2d 1102 (5th Cir. 1990) ...................................................................................9

*Hi–Lite Products Co. v. American Home Products Corp.*,
   11 F.3d 1402 (7th Cir. 1993) .....................................................................................8

*HPI Health Care Svcs., Inc. v. Mt. Vernon Hosp., Inc.*,
   131 Ill. 2d 145, 545 N.E. 2d 672 (Ill. 1989) ...........................................................13

*In re 100% Grated Parmesan Cheese Mktg. and Sales Practices Litig.*,
   393 F. Supp. 3d 745 (N.D. Ill. 2019) .......................................................................20

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
   148 F.3d 283 (3d Cir. 1998) .....................................................................................39

*Iqbal v. Ashcroft*,
   556 U.S. 662 (2009)....................................................................................................5

*Jackson v. Payday Fin., LLC*,
   79 F. Supp. 3d 779 (N.D. Ill. 2015)..........................................................................22

*Klein v. Budget Rent a Car Sys., Inc.*,
   No. 12-7300, 2013 WL 1760557 (D.N.J. Apr. 24, 2013) ........................................37

*Kopley Group V., L.P. v. Sheridan Edgewater Props., Ltd.*,
   376 Ill. App. 3d 1006, 876 N.E. 2d 218 (Ill. App. Ct. 2007) ..................................10

*Landau v. Viridian Energy PA LLC*,
   223 F. Supp. 3d 401 (E.D. Pa. 2016)........................................................................16

*M.W. Widoff, P.C. v. Encompass Ins. Co. of Am.*,
   No. 10-8159, 2012 WL 769727 (N.D. Ill. Mar. 2, 2012) ........................................17

*Marshall v. Verde Energy USA, Inc.*,
   No 18-1344, 2019 WL 1254562 (D. N.J. Mar. 19, 2019) ........................................34

*Martin v. Heinold Commodities, Inc.*,
   163 Ill. 2d 33, 643 N.E. 2d 734 (Ill. 1994) .............................................................17

*Martindell v. Lake Shore Nat'l Bank*,
   15 Ill. 2d 272, 154 N.E. 2d 683 (Ill. 1958) .............................................................30

iv

*Melville v. Spark Energy, Inc.*,
  No. 15-8706, 2016 WL 6775635 (D.N.J. Nov. 15, 2016) ............................ passim

*Mendez v. Avis Budget Grp., Inc.*,
  No. 11-6537, 2012 WL 1224708 (D.N.J. Apr. 10, 2012) ...................................37

*Meyers v. Kissner*,
  149 Ill. 2d 1, 594 N.E.2d 336 (Ill. 1992) ..............................................................9

*Mirkin v. Viridian Energy, Inc.*,
  No. 15-1057, 2016 WL 3661106 (D. Conn. July 5, 2016)..................................16

*Mirkin v. XOOM Energy, LLC*,
  931 F.3d 173 (2d Cir. 2019) ...............................................................................35

*Mohanty v. St. John Heart Clinic, S.C.*,
  225 Ill.2d 52, 310 Ill. Dec. 274, 866 N.E.2d 85 (Ill. 2006) ...............................32

*Mosier v. Village of Holiday Hills*,
  2019 IL App (2d) 180681, ¶ 23, 128 N.E. 3d 1210 (Ill. App. Ct. 2019).............10

*Newman v. Metro. Life Ins. Co.*,
  885 F.3d 992 (7th Cir. 2018) ................................................................. 21, 23, 26

*Nielsen v. United Servs. Auto. Ass'n*,
  244 Ill. App. 3d 658 (2d Dist. 1993).....................................................................28

*Oladapo v. Smart One Energy, LLC*
  No. 14-7117, 2016 WL 344976 (S.D.N.Y. Jan. 27, 2016)..................................31

*Norfolk S. Ry. Co. v. Basell USA Inc.*,
  512 F.3d 86 (3d Cir. 2008) ..................................................................................32

*Northbrook Bank & Trust Co. v. 2120 Div. LLC*,
  2015 Ill. App. 1st 133426 (Ill. App. Ct. 2015) ....................................................39

*Orange v. Starion Energy PA, Inc.*,
  711 Fed. App'x. 681 (3d Cir. 2017) .....................................................................35

*Phillips v. Cty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ..................................................................................5

*Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron Inc.*,
  123 F.3d 111 (3d Cir. 1997) .................................................................................27

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*,
  168 N.J. 255 (2001) ..............................................................................................38

*Richards v. Direct Energy Svcs., LLC*,
  915 F.3d 88 (2d Cir. 2019) ..................................................................................35

*Rockford Mem. Hosp. v. Havrilesko*,
  368 Ill. App. 3d 115, 858 N.E. 2d 56 (Ill. App. Ct. 2006) ..................................11

*Rumick v. Libery Mutual Ins. Co.*,
No. 17-2403, 2018 WL 3740645 (N.D. Ill. Aug. 6, 2018)................................23

*Sabatini v. ITS Amore Corp.*,
455 Fed. Appx. 251 (3d Cir. 2011)..................................................................32

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014) .............................................................................7

*Seville Indus. Mach. Corp.* [*v. Southmost Mach. Corp.*,
742 F.2d 786 (3d Cir. 1984) .............................................................................6

*Sevugan v. Direct Energy Servs., LLC*,
931 F.3d 610 (7th Cir. 2019) ..........................................................................34

*Sevugan v. Direct Energy Servs., LLC*,
No. 17-6569, 2018 WL 2267806 (N.D. Ill. May 17, 2018) ..........................9, 17

*Siegel v. Levy Org. Dev. Co., Inc.*,
153 Ill. 2d 534, 607 N.E. 2d 194 (Ill. 1992) ..................................................17

*Siegel v. Shell Oil Co.*,
612 F.3d 932 (7th Cir. 2010) ..........................................................................21

*Silvis v. Ambit Energy L.P.*,
674 F. App'x 164 (3d Cir. 2017) ..................................................................33, 37

*Simonson v. Hertz Corp.*,
No. 10-1585, 2011 WL 1205584 (D.N.J. Mar. 28, 2011) ...............................37

*Smith v. TA Operating LLC*,
No. 10-2563, 2011 WL 1256613 (D. N.J. Mar. 29, 2011) ...............................27

*Smith v. United Residential Servs. & Real Estate, Inc.*,
837 F. Supp. 2d 818 (N.D. Ill. 2011)...............................................................26

*Spiegel v. EngageTel Inc.*,
372 F. Supp. 3d 672 (N.D. Ill. 2019)...............................................................18

*Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC*,
417 F. Supp. 2d 632 (D.N.J. 2006)...................................................................6

*Surina v. S. River Bd. of Educ.*,
No. 17-2173, 2019 WL 1916206 (D.N.J. Apr. 30, 2019) ...............................28

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966)........................................................................................39

*Terrazzino v. Wal-Mart Stores, Inc.*,
335 F. Supp. 3d 1074 (N.D. Ill. 2018).........................................................12, 14

*Thacker v. Menard, Inc.*,
105 F.3d 382 (7th Cir. 1997) ..........................................................................18

*Todd v. XOOM Energy Maryland, LLC,*
    No. 15-0154, 2017 WL 667198 (D. Md. Feb. 16, 2017)......................................16

*Torres v. Oakland Scavenger Co.,*
    487 U.S. 312 (1988)...........................................................................................39

*Trombley v. National City Bank,*
    826 F. Supp. 2d 179 (D.D.C. 2011)...................................................................39

*Unicus Performance Training, LLC v. Johnson,*
    No. 11-204, 2011 WL 10088338 (Ill. App. Ct. Dec. 14, 2011) ...........................13

*Wigod v. Wells Fargo Bank, N.A.,*
    673 F.3d 547 (7th Cir. 2012)..............................................................................18

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,*
    536 F.3d 663 (7th Cir. 2008) ...................................................................... 21, 26

## Statutes

220 ILCS 5/16-101.................................................................................................26

815 Ill/ Comp. Stat. Ann. § 505/1 ...........................................................................1

N.J.S.A. § 56:8-1.....................................................................................................4

## Rules

Fed. R. Civ. P. 8(a) and 12(b)(6) .................................................................. 4, 5, 7

Federal Rule of Civil Procedure 9(b)..................................................................2, 6

## Other Authorities

5A C. Wright & A. Miller, *Federal Practice and
Procedure* § 1298, at 407 (1969) ..........................................................................6

## INTRODUCTION

For the convenience of the parties, and to preserve judicial resources, Plaintiffs Janet Rolland ("Rolland") and Michael Harty ("Harty") agreed to Defendant Spark Energy, LLC's ("Spark") request that *Harty v. Spark Energy, LLC*, No. 19-2151 (N.D. Ill.), be transferred to this Court. The parties subsequently agreed to consolidate the two actions and they agreed that Plaintiffs would file a consolidated amended complaint. Of course, Plaintiff does not dispute that Spark can move to dismiss Harty's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill/ Comp. Stat. Ann. § 505/1, *et seq*. ("ICFA"), given that this Court has not yet ruled on whether such a claim has been pled adequately. But in apparent disregard for this Court's full docket and Defendant's responsibility not to vexatiously multiply proceedings, Spark also asks this Court to dismiss Harty's contract claim even though the variable rate clause applicable to both Plaintiffs is identical and even though the facts supporting both Plaintiffs' contract claims are the same. In doing so, Defendant regurgitates the same arguments it lost when this Court denied its motion to dismiss Rolland's breach of contract claims, namely its surprising contention that the dramatic disconnect between Spark's rates and competitor rates and wholesale costs does not render plausible Plaintiffs' claim that Spark failed to honor its promise to set rates based on market conditions. This Court considered and rejected this argument, just as it rejected Spark's self-serving

interpretation of its contract that allows it unfettered discretion to set rates irrespective of any market conditions.  It is hard to conceive how Spark re-argues these same points in good faith.

Spark's contention that *Plaintiffs* have somehow acted in bad faith by not unilaterally abandoning Harty's ICFA claim is thus, to be kind, ironic.  This Court has not applied Illinois consumer protection laws (which are not the same as New Jersey's law) to these facts, and it has not addressed at all the extent to which Defendant's bad faith price gouging violates the unjust conduct prong of the ICFA. This Court should not dismiss the ICFA claim because of the differences in Illinois and New Jersey consumer protection laws (including that there is no substantial aggravating factors requirement under the ICFA).

Defendant's other arguments are likewise unavailing.  First, its arguments based on relevant statutes of limitations (as to both Harty's ICFA and breach of contract claims) ignore that Spark perpetrated an ongoing string of breaches and unfair and deceptive conduct that extended well into the statutory period, rendering claims during that period timely and proper.  Second, its arguments that Harty does not plead the requisite deceptive act, proximate causation, and unfair conduct for an ICFA claim are meritless, as Harty alleges -- with the particularity required under Federal Rule of Civil Procedure 9(b) -- that Spark made false representations to customers as part of a scheme employed to accomplish its deception and unfair

conduct (thus satisfying the ICFA's requirement that Plaintiffs plead more than mere breach of contract), that its deceptive overcharging proximately caused Harty injury, and that its practices in the marketplace were unfair.   Third, Defendant conflates technical pleading standards with the substantive merit of Harty's claim that Spark owed a duty of good faith and fair dealing to their Illinois customers -- a claim that Defendant does not, and cannot, dispute.   For these reasons, and others described in more detail below, Defendant's Fourth Motion for Partial Dismissal, as to All of Michael Harty's Claims ("Def. Mem.," ECF No. 99) should be denied in its entirety.

## RELEVANT BACKGROUND

Spark engages in a classic bait-and-switch scheme to overcharge its customers, including Plaintiffs and others throughout the country, for electricity. Spark lures customers to switch to its services by offering an initial "teaser rate" for a limited number of months that is lower than local utility rates.   When doing so, Spark falsely represents to its customers that, once that teaser rate expires, they will be switched to a "competitively priced" rate that may vary from the initial rate "according to market conditions."   However, the variable rate that Spark then actually charges customers is neither "competitively priced" (it is invariably and substantially higher than both the initial rate and utility prices) nor does it "vary according to market conditions" (it is untethered from variations in costs, wholesale rates, and competitors' prices).

3

Seeking redress for Defendant's deceptive practices, Rolland filed her initial Complaint before this Court on April 19, 2017 (ECF No. 1) and amended on January 8, 2018 (ECF No. 30) and August 17, 2018.  ECF No. 48.[1]  Harty, likewise seeking to hold Defendant accountable, filed his initial complaint on March 27, 2019 in *Harty v. Spark Energy, LLC*, No. 19-2151 (N.D. Ill.), ECF No. 1.  At Defendant's request, Plaintiffs consented to transfer the *Harty* action to this Court.  *See id.* at ECF Nos. 21, 23.  On August 2, 2019, Rolland filed an unopposed motion to consolidate these two related matters (ECF No. 89), which the Court granted on September 18, 2019.  ECF No. 94.  Plaintiffs filed their consolidated Third Amended Class Action Complaint ("TAC," ECF No. 95) the same day, alleging violations on behalf of themselves and a proposed nationwide class for common law breach of contract and breach of implied covenant of good faith and fair dealing, and on behalf of Harty and a proposed Illinois subclass for violation of the ICFA and the common law.

## **ARGUMENT**

I.    **Plaintiffs Need Only Plead Factual
      Allegations Rendering Their Claims Plausible.**

In deciding a motion to dismiss under Fed. R. Civ. P. 8(a) and 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most

---

[1] Rolland amended her complaint following dismissals of her claim under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*  Those claims are not present in the current operative complaint and are not at issue in this motion.  Plaintiffs reserve the right to appeal the denial of this claim following trial and judgment.

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (affirming a denial of motion to dismiss); *cf. Bedi v. BMW of North America, LLC*, No. 15-1898, 2016 WL 324950, at *6 (D. N.J. Jan. 27, 2016) (denying motion to dismiss and holding that the "Court cannot weigh evidence at this stage[.]").  In order to survive a motion to dismiss, a party need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement.'").

Moreover, under *Phillips*, a complaint does not fail to state a claim merely because the defendant identifies another equally plausible set of inferences contrary to those identified by the plaintiff.  515 F.3d at 232-33; *see also Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012) (reversing dismissal and holding that "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion"); *Deere & Co. v. AGCO Corp.*, No. 18-827, 2019 WL 668492, at *6 (D. Del. Feb. 19, 2019) ("The question at the pleading stage is not whether there is a plausible alternative to the plaintiff's theory; the question is whether there are sufficient factual allegations to make the complaint's claim plausible") (quoting

5

*Anderson News, L.L.C.*, 680 F.3d at 189-90).

"The Third Circuit has stated that Rule 9(b) requires a plaintiff to state the circumstances of the alleged fraud with enough particularity so as to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Construcciones Haus Soceidad v. Kennedy Funding Inc.*, No. 07-392, 2008 WL 1882857, at *4 (D. N.J. Apr. 24, 2008) (quoting *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007)).  However, as Judge Simandle aptly explained in *Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC*, 417 F. Supp. 2d 632 (D.N.J. 2006):

> [Parties] do not need to plead the "date, place or time" of each alleged misrepresentation or each alleged fraudulent act performed to satisfy the requirements under Rule 9(b).  Indeed, "focusing exclusively on Rule 9(b)'s 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated' by the Federal Rules of Civil Procedure." *Christidis v. First Penn. Mtg. Trust,* 717 F.2d 96, 100 (3d Cir. 1983) (*quoting* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 407 (1969)).  Rather, Rule 9(b) merely requires that "circumstances" of the alleged fraud be pled with enough specificity to "place defendants on notice of the precise misconduct with which they are charged." *Seville Indus. Mach. Corp.* [*v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)].  While allegations of "date, place and time" fulfill these requirements, Rule 9(b) does not require them. *See id.*  Rather, a plaintiff[] can satisfy Rule 9(b) by "us[ing] alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

*Id.* at 644 (denying motion to dismiss fraud claims).

## II.   <u>Harty Properly Pleads Timely Claims Under Each Cause Of Action.</u>

As an affirmative defense, "[n]ormally, the statute of limitations is a defense that cannot serve as a basis for granting relief under Rule 12(b)(6)." *Budzash v. Howell Tp.*, 451 Fed. App'x. 106, 109 (3d Cir. 2011).  Such dismissal is appropriate only "if it is clear from the face of the complaint that the statute of limitations bars the claim." *Clark v. Prudential Ins. Co. of Am.*, 736 F. Supp. 2d 902, 923 (3d Cir. 2010).  Even when entertaining a motion to dismiss on statute of limitations grounds, it is still the rule "that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251-52 (3d Cir. 2014).

Defendant argues that Harty's ICFA and breach of contract claims are completely time-barred.  Not so.  A new and independent injury occurred every time Defendant charged Harty, and Harty paid, an exorbitant variable rate.  Each charge and payment thus constituted a separate breach of contract and violation of the ICFA, and a new statute of limitations began to run with each separate charge and payment. While the statutes of limitations may constrain the period over which Harty can recover damages, Defendant's repeated, ongoing, independent violations continued well into the statutory period for both claims.  Harty is entitled to recovery for all billing cycles that fall within those timely periods.

Defendant cites no authority for the proposition that a plaintiff cannot

recovery for repeated and continuous breaches of contract merely because the first breach was outside the limitations period. Nor can it, as Illinois law holds the opposite. *See Hi–Lite Products Co. v. American Home Products Corp.*, 11 F.3d 1402, 1408-09 (7th Cir. 1993) (applying Illinois law and holding that "[c]ontracts requiring continuous performance are capable of being partially breached on numerous occasions. Each partial breach is actionable and is subject to its own accrual date and own limitation period. Accordingly, because each breach of a continuous duty has its own accrual date, a plaintiff may sue on any breach which occurred within the limitation's period, even if earlier breaches occurred outside the limitation period.") (internal quotations and citations omitted).

The same is true for statutory claims such as the ICFA. The Illinois Supreme Court holds that each discrete injury caused by an ongoing violation of a statute creates a discrete cause of action for which the statute of limitations starts anew:

> Although defendants argue that the only conduct at issue is this litigation was the one-time adoption of their vehicle allocation system in the early 1970s, plaintiff's complaint put at issue both the adoption of the system and the individual vehicle allocations under that system . . . Each individual allocation was the result of discrete decisions by defendants regarding the numerous adjustable parameters that drove the computerized allocation system . . . each allocation constituted a separate violation of section 4 of the Act, each violation supporting a separate cause of action . . . We reject . . . defendants' . . . contention that plaintiff's statutory claim was barred in its entirety. Because each allocation would have supported a separate cause of action, plaintiff may recover damages for the four-year period prior to the filing of its complaint.

*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 348-49, 770 N.E. 2d 177, 192-93 (Ill. 2002) (citing *Meyers v. Kissner,* 149 Ill. 2d 1, 10-11, 594 N.E. 2d 336, 340 (Ill. 1992) and *Hendrix v. City of Yazoo City,* 911 F.2d 1102, 1103 (5th Cir. 1990)).   The same is true here.   It may have been more than three years ago that Defendant adopted a variable rate methodology that was contrary to its promise that it would charge a competitive rate based on market conditions, but each time it overcharged Harty, it violated the ICFA and therefore the limitations period began anew.

Not surprisingly, the District Court in *Sevugan* rejected this exact argument in finding the statute of limitations was not a basis to dismiss the complaint:

> Under Illinois law, "[c]laims accrue, commencing the limitations period, when 'the party seeking relief knows or reasonably should know of an injury and that it was wrongfully caused.' " The term "wrongfully caused" does not mean the plaintiff must have knowledge of actionable conduct before the statute of limitations is triggered; rather, it requires only that the plaintiff have "sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved . . . Sevugan's claim did not accrue when the variable rate began but when he knew enough to be put on inquiry that he was paying higher-than-market rates because he had been deceived. Nothing in the Complaint sheds light on when or how Sevugan learned that the variable rates were higher than others available in the market, that the variable rates were not commensurate with wholesale market changes, or any other information that could possibly alert him to wrongful conduct of the type he alleges on the part of Direct Energy. Therefore, the Complaint does not "plainly reveal" that Sevugan's ICFA claim is untimely, and the Court declines to dismiss it as time-barred at this stage.

*Sevugan v. Direct Energy Servs., LLC*, No. 17-6569, 2018 WL 2267806, at *4-5

(N.D. Ill. May 17, 2018).

If the Court does not find that each monthly overcharge is an independent violation of the ICFA, then the alternative is that Defendant was engaged in a continuing course of conduct that did not conclude until Plaintiff terminated his service. Under the continuing course of conduct doctrine, the limitations period is extended from the beginning of the violation until it was complete. *See Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 794-95 (N.D. Ill. 2016) (applying the continuing violation doctrine as defense to the statute of limitations and refusing to dismiss ICFA claims where "Plaintiffs allege an ongoing scheme to defraud" rather than "discrete acts that do not reinforce each other or that cannot reasonably be linked together in a single chain") (internal quotations and citations omitted).[2]

Defendant's argument that "Harty plainly knew or reasonably should have

---

[2] The cases cited by Defendant are unavailing. *Kopley Group V., L.P. v. Sheridan Edgewater Props., Ltd.*, 376 Ill. App. 3d 1006, 1021, 876 N.E. 2d 218, 231 (Ill. App. Ct. 2007) and *Mosier v. Village of Holiday Hills*, 2019 IL App (2d) 180681, ¶ 23, 128 N.E. 3d 1210, 1218 (Ill. App. Ct. 2019) both held that the statute of limitations at issue had run with respect to claims brought based on a single, discrete transaction, rather than an ongoing string of breaches that continued into the relevant statutory period. Moreover, both cases only dismissed the ICFA claim after the respective plaintiffs failed to carry their burden regarding the unrelated "discovery rule" doctrine, which Harty does not raise. *Clark v. Robert W. Baird Co., Inc.*, 152 F. Supp. 2d 1040, 1045 (N.D. Ill. 2001) in inapposite as it does not involve a claim under the ICFA, the entire alleged string of fraudulent activity occurred outside of the applicable statutory period, and the plaintiff there relied on the discovery rule. Both *Kopley* and *Clark* are further inapposite because they applied the more stringent burden found at the summary judgment stage to the plaintiffs' allegations.

known of the alleged deception or unfair conduct by early 2013 when he received variable-rate invoices from his utility that contained the alleged 'consistently higher' rate and the $4.95 administrative fee" is unavailing. *See* Def. Mem. at 6. Defendant knows that no reasonable consumer, including Harty, is sufficiently familiar with the intricacies and constant fluctuations of the electricity commodity market. Indeed, Spark's business model is predicated on exploiting that precise information asymmetry between Spark and its consumers; otherwise Spark would not have any variable rate customers. And of course, what Plaintiff knew and when is a question of fact, and each bill restarted the statute of limitations at least for claims related to that bill.

## III.   <u>Harty Properly Pleads His ICFA Claim.</u>

### A.   <u>Defendant Committed Deceptive Acts.</u>

Defendant's request that this Court adopt a cramped view of the ICFA runs contrary to the rule that the act is to be liberally applied, so as to effect its remedial intent for the protection of consumers:

> The [ICFA] is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. It eliminated many of the common-law fraud elements, creating a new cause of action that affords consumers broad protection. It is to be liberally construed to effect its purposes.

*Rockford Mem. Hosp. v. Havrilesko*, 368 Ill. App. 3d 115, 121, 858 N.E. 2d 56, 61 (Ill. App. Ct. 2006) (internal citations omitted).

Defendant argues that Harty's ICFA claims fail because they merely repeat his breach of contract claims.  Not so.  "Although an ICFA claim must include more than simply breach-of-contract allegations, 'a promise to perform future conduct can give rise to a claim of fraud if the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud.'" *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1086 (N.D. Ill. 2018) (quoting *Block v. Lifeway Foods, Inc*., No. 17-1717, 2017 WL 3895565, at *4 (N.D. Ill. Sept. 6, 2017) (internal quotations omitted)).  Plaintiffs are not just alleging that Spark charged a rate as high as the market would bear.  They plausibly allege, as this Court held, that Spark violated its promise to charge a rate based on market conditions.  Harty's allegations are more than enough to render plausible his claim that Spark not only failed to live up to its end of the contract, but that it knowingly made false representations that it would provide a rate based on market conditions, with no intention of ever doing so.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

Plaintiff alleges that "Spark knows full well that it charges variable rates that are unconscionably high, and the misrepresentations it makes with regard to the rates being based on market conditions were made for the sole purpose of inducing customers to purchase electricity from Spark so that it can reap outrageous profits to the direct detriment of consumers without regard to the consequences high utility bills cause such consumers." TAC ¶ 75. This allegation thus falls squarely in the category of misrepresentations that "are actionable 'if the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud.'" *Unicus Performance Training, LLC v. Johnson*, No. 11-204, 2011 WL 10088338, at *6 (Ill. App. Ct. Dec. 14, 2011) (quoting *HPI Health Care Svcs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 168, 545 N.E. 2d 672, 682 (Ill. 1989)). *See also Bell Enters. Venture v. Santanna Natural Gas Corp.*, No. 01-2212, 2001 WL 1609417, at *4 (N.D. Ill. Dec. 12, 2001) (denying motion to dismiss ICFA claim

as a repackaged breach of contract claim and holding that "[i]f Defendants made false representations in order to induce natural gas users to contract with Santanna, such conduct could constitute a deceptive act or practice.").   "Put another way, according to the complaint, [Defendant's misrepresentation] was more than just a failure to perform, it was the scheme through which [Defendant] achieved its fraud." *Terrazzino*, 335 F. Supp. 3d at 1086.

The same analysis counsels against dismissing claims predicated on Defendant's deceptive misrepresentations concerning an administrative fee.  When Harty agreed to sign up for Spark's services, he received a welcome letter and a Terms of Service and a Disclosure Statement.  ECF No. 100-2.

 The welcome letter prominently discloses "Monthly Fee: None."  The Terms of Service informed Plaintiff that during the time he was on a fixed rate, he "may also pay a monthly administrative fee, the amount of which, if applicable, is disclosed" in the Disclosure Statement.  There is no fee disclosure in the Disclosure Statement, and under the heading "Variable Rate Plan" there is no mention of an administrative fee.  The contract does not allow Defendant to unilaterally introduce such a fee through anything short of an updated Uniform Disclosure Statement or Electric Service Agreement.

In the only instances where the contract allows for administrative fees, it specifies that those fees must be disclosed in the Uniform Disclosure Statement or

Electric Service Agreement.  There is no disclosure that there would be a fee for the rollover variable rate, or that any fee for any plan would be disclosed anywhere outside the Disclosure Statement or Electric Service Agreement.  That Spark innocuously disclosed that fee in the renewal letter -- rather than in a new Disclosure Statement -- does not change the fact that Defendant misled him in the first instance, and whether a subsequent, informal disclosure cures an initial deceptive act is a question of fact for the jury.

Here too, Harty lays out specific allegations that Defendant knows full well that it will charge this fee without disclosing it in the specific, enumerated locations described in the contract, and that this material term is misrepresented for the purpose of enticing those customers that it intends to deceive. *Id.* ¶ 74.  The exhibits attached to Defendant's motion confirm Plaintiffs' allegations of affirmative and willful misrepresentations, ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

Defendant also appears to argue that the entire energy supply services industry is categorically immune from acting deceptively or unfairly, stating, "[w]hen a state

chooses to deregulate a retail energy market, there is no fraud in charging prices the market will bear." Def. Mem. at 5.  Not only does this ignore the extensive body of case law finding that third-party energy suppliers are subject to consumer fraud statutes,[3] and plausible allegations of Defendant's knowing and false representations to its consumers, but it is also emblematic of Defendant's disregard toward its customers.  And of course, Harty is not simply alleging that Defendant charges too

---

[3] *See Melville v. Spark Energy, Inc.*, No. 15-8706, 2016 WL 6775635 (D.N.J. Nov. 15, 2016) (sustaining New Jersey Consumer Fraud Act claim); *Komoda v. Palmco Energy,* No. L-3263-14 (N.J. Super. Ct. Civ. Div. Sept. 19, 2014) (attached as Exhibit 2 to Declaration of Matthew R. Mendelsohn, ECF No. 20-1) (sustaining New Jersey Consumer Fraud Act claim); *Hamlen v. Gateway Energy Servs. Corp.*, No. 16-3526, 2017 WL 6398729 (S.D.N.Y. Dec. 8, 2017) (*Hamlen II*) (sustaining New Jersey Consumer Fraud Act claim); *Gonzales v. Agway Energy Services, LLC*, No. 18-235, 2018 WL 5118509 (N.D.N.Y. Oct. 22, 2018) (sustaining New York deceptive business practices act claims); *Donnenfeld v. Petro, Inc.*, No. 17-2310, 2018 WL 4356727 (E.D.N.Y. Sept. 12, 2018) (same); *Forte v. Direct Energy Servs., LLC*, No. 17-264, 2017 WL 3495861 (N.D.N.Y. Aug. 14, 2017) (sustaining New York deceptive business practices act claims); *Claridge v. N. Am. Power & Gas, LLC*, No. 15-1261, 2015 WL 5155934 (S.D.N.Y. Sept. 2, 2015) (sustaining New York deceptive business practices act claims); *Chen v. Hiko Energy, LLC*, No. 14-1771, 2014 WL 7389011 (S.D.N.Y. Dec. 29, 2014) (sustaining New York deceptive business practices act claims); *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401 (E.D. Pa. 2016) (sustaining Pennsylvania Unfair Trade Practices And Consumer Protection Law claim); *Todd v. XOOM Energy Maryland, LLC*, No. 15-0154, 2017 WL 667198 (D. Md. Feb. 16, 2017) (sustaining New Jersey Consumer Fraud Act and Maryland Consumer Protection Act claims); *Mirkin v. Viridian Energy, Inc.*, No. 15-1057, 2016 WL 3661106 (D. Conn. July 5, 2016) (sustaining New York deceptive business practices act claims); *Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132 (D. Conn. 2015) (sustaining Connecticut Unfair Trade Practices Act claim); *Fritz v. North American Power & Gas, LLC*, No. 14-634 (D. Conn. Jan. 29, 2015) (sustaining New Jersey Consumer Fraud Act claim).

much.  Instead, he alleges that Spark promises to charge a rate based on market conditions when it knows its actual rate is anything but.[4]

### B.  Defendant's Fraud Was The Proximate Cause Of Harty's Injury.

As the Illinois Supreme Court has held, in analyzing claims under the ICFA on a motion to dismiss, "the required allegation of proximate cause is minimal since that determination is best left to the trier of fact."  *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 504, 675 N.E. 2d 584, 595 (Ill. 1996).  Nor does the ICFA does not have a reliance requirement.  *See, e.g.*, *Connick*, 174 Ill. 2d at 501 ("Plaintiff's reliance is not an element of statutory consumer fraud."); *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 75-76, 643 N.E. 2d 734, 754-55 (Ill. 1994) (no actual reliance); *Siegel v. Levy Org. Dev. Co., Inc.*, 153 Ill. 2d 534, 542, 607 N.E. 2d 194, 198 (Ill. 1992) (no actual reliance); *Cozzi Iron & Metal, Inc. v. U.S. Office*

---

[4] Defendant's cited cases are unpersuasive.  The court in *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 393, 400 (7th Cir. 2011) specifically distinguished its holding from cases that "involved affirmative acts of misrepresentation and not a simple breach of contract."  Likewise, in *M.W. Widoff, P.C. v. Encompass Ins. Co. of Am.*, No. 10-8159, 2012 WL 769727 (N.D. Ill. Mar. 2, 2012), the court observed that, unlike Harty, "[i]n this case, the Plaintiffs do not allege a fraud related to the product itself."  *Sevugan v. Direct Energy Svcs., LLC*, No. 17-6569, 2018 WL 2267806 (N.D. Ill. May 17, 2018), and *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803 (7th Cir. 2018), are inapposite because neither addressed, and the plaintiffs did not plead, that the misrepresentations at issue found in the contract language were not merely the result of simple failures to perform, but were intended to mislead consumers with respect to material terms so as to perpetrate a fraud upon them.

*Equipment, Inc.*, 250 F.3d 570, 576 (7th Cir. 2001) ("As a federal court reviewing a state statute, we must follow the state's highest court's interpretation of its own state law.  Based on this principle, we must hold that a complaining party is not required to establish reliance, either actual or reasonable, to state a claim under the Illinois Consumer Fraud Act.") (internal citation omitted).

A plaintiff thus need not allege that he actually relied on a misrepresentation in order to prove causation; rather, under the ICFA "it is not necessary to prove actual reliance on the deception." *Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1997).  A plaintiff need only come forward with sufficient evidence for a jury to find "'that the defendant committed a deceptive or unfair act and intended that the plaintiff rely on that act.'"  *Spiegel v. EngageTel Inc.*, 372 F. Supp. 3d 672, 688 (N.D. Ill. 2019) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012)).  Requiring actual reliance as proof of causation is reversible error.  *See Edson v. Fogarty*, 2019 IL App (1st) 181135, ¶ 3 (Ill. App. Ct. 2019), *appeal denied*, 132 N.E. 3d 329 (Ill. 2019) ("We reverse the entry of summary judgment on the Consumer Fraud Act and Real Estate License Act claims, as the trial court incorrectly held that the claims require proof of reliance.").  Defendant's argument that Harty must allege that he read a particular statement and altered his course of conduct accordingly in order to show causation is nothing more than reliance in disguise, an argument that is precluded under Illinois law.

18

In light of the minimal requirement for proximal causation, and the explicit stricture that there is no reliance requirement, courts have refused to dismiss ICFA claims against energy providers where "[p]laintiffs allege they suffered damages as a result of Defendants' unfair and deceptive practices. To prevail on the ICFA claim, Plaintiffs will need to demonstrate that the alleged misrepresentations caused their injury. But at this stage in the game, their general allegation of injury is more than sufficient." *Bell Enters. Venture*, 2001 WL 1609417, at \*5 (internal quotation omitted; denying motion to dismiss ICFA claim against natural gas company).

Cases cited by Defendant are inapposite. In *Avery v. State Farm Mut. Auto. Ins. Co*., 216 Ill.2d 100, 835 N.E.2d 801 (Ill. 2005) the decision on proximate causation for the ICFA was properly made only by the trier of fact after a bench trial on the merits, including witness testimony on the topic and after it was determined that there were no actual damages at issue. *Id*. at 200-03. The plaintiff in *Cmty. Bank of Trenton*, 887 F.3d at 822, failed to show proximate causation in a data breach case because it was not a target nor recipient of the allegedly fraudulent statements at issue; indeed it was not even a consumer in the context of the case at all, but a third-party company allegedly injured by "price effects in the marketplace." "Illinois courts are skeptical of business-v.-business ICFA claims where neither party is actually a consumer in the transaction." *Id*. Harty, by contrast, directly received the misrepresentations at issue, and Defendant intended that he personally

19

rely on them as part of its price-gouging scheme. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333-34 (7th Cir. 2018), where the court acknowledges "proximate cause in an ICFA claim is typically an issue of fact," is distinguishable on its facts, as the *Haywood* plaintiff "fail[ed] to cite a specific deceptive representation that caused her to pay for something she did not receive," a requirement which Harty has satisfied, but instead clearly engaged the defendants services only because she had received a gift card. *In re 100% Grated Parmesan Cheese Mktg. and Sales Practices Litig.*, 393 F. Supp. 3d 745 (N.D. Ill. 2019) is likewise distinguishable because in that case the court held that internal contradictions in the pleadings meant that "the only plausible inference from Plaintiffs' well-pleaded factual allegations is that they did not read the products' ingredients lists before purchase" because that same ingredient list disclosed the presence of cellulose while the plaintiffs affirmatively claimed ignorance of that ingredient's presence. Spark never informed its customers that it had no intention of fulfilling its promise to charge competitive rates based on market conditions. In *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 74-76, 879 N.E. 2d 910, 927-28 (Ill. 2007), an appeal on a motion for class certification, the court found that any actual misrepresentations were only identified in internal documents never disseminated to the plaintiffs.

20

## C.    <u>Defendant Violated The ICFA By Engaging In Unfair Conduct.</u>

As Defendant concedes, to the extent Harty's ICFA claim alleges unfair conduct, rather than deception, it "need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)."   *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).   "Unfairness under the ICFA depends on three factors: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and/or] (3) whether it causes substantial injury to consumers." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1002 (7th Cir. 2018) (internal quotation omitted).   Analyzing whether a practice qualifies as "unfair" under the ICFA requires "a case-by-case analysis."  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).   This Court has not rendered an opinion regarding whether Defendant's price gouging scheme is unfair under the ICFA.

Defendant makes three arguments here: that its unfair price gouging scheme did not cause Harty to be overcharged; that Spark did not act oppressively because Harty should have realized it engages in price gouging and chosen a different alternative; and that offering a teaser rate is not, as a general matter, unfair.  None of these arguments are persuasive.

Harty plausibly alleges that Defendant's unfair conduct caused him injury. The question is not whether Spark's unfair conduct "cause[d] Harty to enter into a

fixed rate contract and roll over a year later onto a variable rate." Def. Mem. at 13. That is a formulation of causation for a deception claim.   For the fairness prong, Harty's theory is that Defendant engages in price gouging in contravention of its promises, and it is the price gouging itself that caused Harty harm. *See* TAC ¶¶ 1-2, 6, 15. Not surprisingly, courts hold that for ICFA claims arising from an unfair practice, the causation inquiry is whether the practice alleged to be unfair caused the injury. *See Beatty v. Accident Fund Gen. Ins. Co*., No. 17-1001, 2018 WL 3219936, at *13 (S.D. Ill. July 2, 2018) (denying motion to dismiss ICFA claim and holding that "Defendants assert that to plead causation and materiality, Dr. Beatty must allege that he received a deceptive communication from a defendant and that he would have changed his conduct had he known of the concealed information.  But Dr. Beatty is not bringing a deceptive practices claim. While he must plead causation, the only requirement is that he plead the unfair practice was the proximate cause of his injury."); *Jackson v. Payday Fin., LLC*, 79 F. Supp. 3d 779, 789 (N.D. Ill. 2015) (denying motion to dismiss and holding that "Plaintiff sufficiently pled the proximate cause of their injury was the Defendants conduct.").

Defendant's argument that it did not act unfairly because Harty could have purchased electricity elsewhere only touches on the second element of unfairness ("whether it is immoral, unethical, oppressive, or unscrupulous") and the "oppressive" element therein, based on his option to discontinue his contract.  But

22

in doing so, Defendant ignores that, under the ICFA, "[a] significant showing that any of the three factors is met is enough." *Newman*, 885 F.3d at 1002 (internal citation omitted). Defendant makes no effort to deny that its price gouging scheme causes injuries to consumer or that it violates Illinois public policy, and it should not be heard to raise new arguments on these issues on reply.

First, Plaintiff alleges that Spark's practices cause substantial injury to consumers, including himself. The TAC details how Harty and others have been overcharged by Defendant. TAC at ¶ 49. The financial harm from such overcharging is clearly a substantial harm under the ICFA. *See Newman*, 885 F.3d at 1002 (difference between amount victim of bait-and-switch scheme paid and the amount she should have paid satisfied substantial harm portion of ICFA unfairness analysis).

Second, Spark's bait-and-switch price gouging scheme violates public policy. Indeed, courts have already held "a bait-and-switch strategy . . . (if proven) would offend Illinois's public policy." *Newman*, 885 F.3d at 1002; *see also Rumick v. Libery Mutual Ins. Co.*, No. 17-2403, 2018 WL 3740645, at *8 (N.D. Ill. Aug. 6, 2018) (denying in part motion to dismiss ICFA claim with respect to allegations of unfair practices based on "a bait-and-switch tactic"). In doing so, these courts point to the fact that "[t]he State has twice condemned the very practice" of insurance companies using misrepresentations in bait-and-switch schemes. *Newman*, 885 F.3d

23

at 1002.

Similarly, the state of Illinois has also roundly condemned the price gouging practices by ESCOs like Spark (or ARES as they are referred to in Illinois) as violating public policy, as evidenced by a series of actions by the state's Attorney General against such companies for conduct like that identified by Harty.  *See Illinois attorney general calls for greater regulation of 'deceptive' energy suppliers*, THE SOUTHERN ILLINOISAN,  https://thesouthern.com/news/local/govt-and-politics /illinois-attorney-general-calls-for-greater-regulation-of-deceptive-energy/article_ c3ae26a0-f846-53e1-8c0e-094b3654a536.html (last accessed Nov. 3, 2019) (Illinois Attorney General's office has filed suit against nine ESCOs and is advocating for increased statutory regulation, with current Attorney General stating "'almost nobody' who signs up to receive gas or electricity from alternative energy providers ends up paying less for their energy bills than consumers who stayed with their public utility" and that "'[n]ot everybody who is a victim of their utility rates increasing as a result of being victimized by one of these suppliers realizes this, that they're being victimized, they're paying increased rates'").

As Illinois Attorney General Kwame Raoul has said "alternative retail electricity suppliers use deceptive marketing practices and outright fraud to profit

from selling overpriced electricity to consumers."[5]   His predecessor as Attorney

General, Lisa Madigan likewise said, "[a]lternative retail electric suppliers have a

terrible track record of deceptive marketing tactics and selling overpriced

electricity."[6]   The Illinois Commerce Commission has also recognized this

widespread overcharging, finding that "customers in the ComEd territory as a whole

have paid about $138 million more for electricity than traditional utility customers

from June 2017 through May 2018.   Statewide, residential and small commercial

customers enrolled with ARES have paid over $600 million more for electricity in

the last four years than if they continued to purchase their electricity from the

regulated utility."   *Madigan Sues Another Alternative Retail Electric Supplier &*

*Reaches $3 Million Settlement for Defrauded Customers*, OFFICE OF ILLINOIS

ATTORNEY GENERAL,   http://www.illinoisattorneygeneral.gov/pressroom/2018_11/

20181119b.html (last accessed Oct. 28, 2019).

Moreover, Spark takes advantage of deregulation and the fact that no

government agency tracks or approves its rates to engage in price gouging.   The

---

[5] *Attorney General Raoul Secures More Than $3 Million for People Defrauded by Major Energy, Eligo Energy, and Realgy,* OFFICE OF ILLINOIS ATTORNEY GENERAL, http://www.illinoisattorneygeneral.gov/pressroom/2019_08/20190819.html   (last accessed Nov. 3, 2019).

[6] *Attorney General Madigan Secures $2.65 Million in Refunds for Illinois Residents Defrauded by Sperian Energy,* OFFICE OF ILLINOIS ATTORNEY GENERAL, http://www.illinoisattorneygeneral.gov/pressroom/2018_10/20181015.html   (last accessed Oct. 28, 2019).

purpose of deregulation was to allow ESCOs like Spark to reduce consumers' electricity costs by using innovative techniques and buying strategies to promote competition. *See* TAC ¶ 13. But instead of using its superior purchasing ability to reduce costs, Spark uses the fact that consumers do not have access to information regarding wholesale markets or the unspecified market conditions Spark contends it considers to foist unreasonably high rates on an unsuspecting public. Spark's actions thus violate the public policy embodied in the Illinois Electric Service Customer Choice and Rate Relief Law, 220 ILCS 5/16-101 *et seq.* *See* TAC ¶ 21.

The public policy concerns and substantial harm suffered by Harty and Defendant's other customers in Illinois are more than sufficient to sustain an ICFA claim of unfair conduct at the pleading stage. Courts have denied motions to dismiss based on less egregious facts. *See, e.g., Smith v. United Residential Servs. & Real Estate, Inc.*, 837 F. Supp. 2d 818, 823 (N.D. Ill. 2011) (denying motion to dismiss where the defendant "did not hold the HUD-required counseling session and did not adequately explain the loan terms."); *Windy City*, 536 F.3d at 672 ("Count I alleges that CIT used unfair practices, specifically the dissemination of false advertisements for the purpose of inducing the plaintiffs to enter into unconscionable equipment rental agreements."); *Newman*, 885 F.3d. at 1002-03 (reversing dismissal of ICFA claim under both unfairness and deceptive prongs).

26

IV.   **Harty Properly Pleads His Breach Of Contract Claim.**

A.   **This Court Has Already Ruled That**
     **There Is A Plausible Breach Of Contract**
     **Claim Based Defendant's Failure To Charge**
     **A Rate That "May Vary According To Market Conditions."**

Defendant improperly seeks to relitigate the precise arguments that it previously raised, and that this Court rejected, with respect to Rolland's breach of contract claim based on Defendant's failure to provide a contractually-promised rate based on market conditions. Harty's contract is identical to Rolland's in all material respects. *Compare* ECF No. 48-1 (Rolland contract) with ECF No. 100-2 (Harty Contract). Defendant's violations of the terms of that agreement, which gave rise to Harty's breach of contract claim, are likewise identical. *See* TAC at ¶¶ 23-75. And the facts Harty pleads supporting his claim that Defendant does not base its rates on market conditions (namely utility rates, wholesale rates, and the rates other competitors charge) are the same as Rolland pled. *Compare id.* at ¶¶ 30-34, 36-40 *with id.* at ¶¶ 49, 53-57, 61-62, 64-66. Accordingly, there is no reason to depart from this Court's previous decision, and it is hard to conceive how Defendant's regurgitation of these arguments is not vexatious or in good faith.

This proverbial second bite at the apple is prohibited under the "law of the case doctrine," which "directs courts to refrain from re-deciding issues that were resolved earlier in the litigation." *Smith v. TA Operating LLC*, No. 10-2563, 2011 WL 1256613 (D. N.J. Mar. 29, 2011) (citing *Pub. Interest Research Group of N.J.,*

*Inc. v. Magnesium Elektron Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)). The recent decision in *Surina v. S. River Bd. of Educ.*, No. 17-2173, 2019 WL 1916206 (D.N.J. Apr. 30, 2019) is on all fours. There the Court set forth the standard for application of law of the case:

> The Supreme Court in *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), determined that when exercising discretion with regard to former rulings courts should "be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *Id.* at 816, 108 S.Ct. 2166. The Third Circuit has adopted the "extraordinary circumstances" framework for reviewing "law of the case" disputes. The "law of the case" doctrine does not apply where (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create a manifest injustice.

*Surina*, 2019 WL 1916206, at *5. In applying the law of the case, the *Surina* Court noted that "[w]ithout any argument from [the moving party] regarding available new evidence, supervening new law, or why the Court's previous decisions were clearly erroneous, [the moving party has] entirely failed to carry burden of overcoming the strong presumption in favor of applying the law of the case." The same applies to Defendant in this case.

Indeed, Defendant concedes that the standard remains the same as when the Court previously ruled against it -- that is, in order to state a valid breach of contract claim, Plaintiffs need only plausibly allege the same four elements:

> (1) "the existence of a valid and enforceable contract" (Def. Mem. at 15 (citing *Nielsen v. United Servs. Auto. Ass'n*, 244 Ill. App. 3d 658 (2d

28

Dist. 1993); *compare* ECF No. 34 at 6:17-18 ("a valid contract existed between the plaintiff and the defendant" (quoting *Melville v. Spark Energy, Inc.*, No. 15-8706, 2016 WL 6775635, at \*5 (D. N.J. Nov. 15, 2016)));

(2)   "performance by the plaintiff" (Def. Mem. at 16; *compare* ECF No. 34 at 6:19-20 ("the plaintiff performed her obligations under the contract"));

(3)   "breach of the contract by the defendant" (Def. Mem. at 16; *compare* ECF No. 34 at 6:18-19 ("the defendant breached the contract")); and

(4)   "resulting injury to the plaintiff" (Def. Mem. at 16; *compare* ECF No. 34 at 6:20-21 ("the plaintiff incurred damages as a result of the breach")).

As the Court has already held, Plaintiffs' allegations satisfy all four of these elements.  ECF No. 34 at 6:22-7:3.

First, Defendant attempts to resuscitate its argument that "'may vary according to market conditions' means that Spark could but was not required to consider market conditions."  *See* Def. Mem. at 2; *accord* Def. Mem. at 17-19. However, as this Court explained when rejecting Defendant's argument that "'may' could mean 'may' or 'may not'" the first time, "[t]he Terms and Conditions in the present case do not provide that Defendant may set its rates based on a number of factors.  Similarly, the Terms and Conditions do not contain the type of discretionary language contained in the contracts in other cases in which courts found that plaintiffs could not sustain [their] claims."  ECF No. 34 at 8:13-15, 5:14-20.

Second, Defendant argues that because its Terms of Service simply referred to "market conditions" without further explanation of the factors it employs, that

term should be regarded -- as a matter of law at the motion to dismiss stage -- as meaningless, and Defendant should have full discretion to engage in price gouging irrespective of any market conditions.  However, disregarding the contract's plain language is contrary to the well-established principles of contract interpretation. *See, e.g.*, *Martindell v. Lake Shore Nat'l Bank*, 15 Ill. 2d 272, 283, 154 N.E. 2d 683, 689 (Ill. 1958) ("A contract, however, is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since it will be presumed that everything in the contract was inserted deliberately and for a purpose.").

Moreover, there is nothing ambiguous about the contract's variable rate pricing methodology.  The contract specifies that once Harty's fixed rate expires, he will be shifted to the variable rate which "may vary" from the fixed rate in accordance with market conditions, a term that has been consistently interpreted by numerous courts to mean reflective of wholesale costs and competitors' rates -- including by this very Court.  *See* ECF No. 34 at 6:22-7:3 (holding that Rolland's comparisons to local wholesale electricity prices and PSE&G's rates plausibly demonstrated that the variable rate did not in fact vary according to "market conditions").  *Melville v. Spark Energy* is also instructive.  There, the contract similarly stated that the variable rate would be set "according to market conditions." 2016 WL 6775635, at *1.  The plaintiff "argue[d] that rates charged by Spark were not market-based and, in support, list[ed] the rates charged by Spark in comparison

30

to PSE&G during several months from 2013 to 2014." *Id.* at *3.   Judge Kugler

concluded that "[s]uch evidence supports the allegation that Spark's prices were

untethered to those of the market at large . . . because PSE&G is a supplier in the

energy market[,] its prices thus serve as at least partial indications of the market rate

and are relevant." *Id.   Oladapo v. Smart One Energy, LLC* is likewise instructive.

There, Smart One represented that it would set prices "in response to changing gas

market conditions."   No. 14-7117, 2016 WL 344976, at *3-*4 (S.D.N.Y. Jan. 27,

2016).   The Court held that "Plaintiff's allegations that Smart One's prices bore an

inverse relationship to [the utility's] supply pricing are sufficient, at the pleading

stage, to support an inference of breach of Smart One's contractual undertakings."

*Id.*[7]

    While Plaintiffs' comparisons to competitors' and wholesale rates are more

than sufficient to plausibly allege breach of contract, ███████████████

---

[7] *See also Claridge*, 2015 WL 5155934, at *6 (holding that, because "variable market based rates" may be interpreted as referring to prevailing market rates charged by competing ESCOs, the fact that the defendant charged more than its competitors was sufficient to allege that defendant "breached its promise to set its monthly variable rates according to market rates"); *Fritz v. North American Power & Gas, LLC*, No. 14-645, at 4-5 (D. Conn. Jan. 29, 2015), ECF No. 42 (attached as Exhibit 3 to Declaration of Matthew R. Mendelsohn, ECF No. 20-1) (holding that local utility rates plausibly serve as a proxy for "market price[s]"); *Chen*, 2014 WL 7389011, at *6 ("Given the dramatic differences in pricing between defendant and PSE&G, it is plausible defendant's rates were not, in fact, reflective of the wholesale cost of electricity or gas, market-related factors, and defendant's 'costs, expenses and margins.'").

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

Defendant seeks to cast Plaintiffs' reasonable benchmarks for market conditions as overly restrictive, but this is clearly an issue for a trier of fact, rather than a ruling as a matter of law at the motion to dismiss stage. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."); *see also Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (holding that, even at the more stringent summary judgment stage, "a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder."). Moreover, whether or not a material breach of contract has been committed is a question of fact. *See Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill.2d 52, 72, 310 Ill. Dec. 274, 285, 866 N.E.2d 85, 96 (Ill. 2006); *Sabatini v. ITS Amore Corp.*, 455 Fed. Appx. 251, 256 (3d Cir. 2011) ("Materiality of a breach is a question of fact.") (citing *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008)).

Even if the contract was ambiguous, which it is not, the Court should "view[]

the ambiguous clause in the light most favorable to [Harty]." *See Silvis v. Ambit Energy L.P.*, 674 F. App'x 164, 168 (3d Cir. 2017) (reversing district court's dismissal of breach of contract claim, which held that the contract afforded ESCO discretion to set prices and did not contain a duty to set competitive rates, on the grounds that the operative clause could be "'reasonably or fairly' understood" as the plaintiffs' suggested). Moreover, the principles of contract construction require that "the terms of the contract be construed against the plaintiff, a non-drafter." *Devcon Intern. Corp. v. Reliance Ins. Co.*, 609 F.3d 214, 218 (3d Cir. 2010).

When read in the light most favorable to Plaintiffs, Defendant's representations lend themselves to the interpretation that Defendant's variable rate could only vary from the preexisting fixed rate "according to market conditions," *i.e.*, reflective of the wholesale cost of purchasing electricity and be competitive. *See Melville*, 2016 WL 6775635, at *5. Here, the TAC amply alleges that Spark's rates do not reflect changes in market conditions because they are always substantially higher than other suppliers' rates and do not vary with changes in wholesale rates, and Defendant does not contend otherwise. It is thus plausible that Defendant's variable rates were not set "according to market conditions," *i.e.,* not reflective of the wholesale cost of electricity or retail prices in the market.

Defendant's cited cases do nothing to warrant reversal of the Court's prior determination that Plaintiffs have plausibly stated a breach of contract claim.

33

*Sevugan v. Direct Energy Servs., LLC,* 931 F.3d 610 (7th Cir. 2019), which Defendant relies upon extensively, is clearly distinguishable. In *Seguvan*, the ESCO contract at issue provided that charges to customers would include "an adder, determined solely by Direct Energy in its discretion." *Sevugan*, 2019 WL 3367674, at \*2. In its analysis, the Seventh Circuit emphasized that the pricing provision granted Direct Energy the sole discretion to set its rates, including its adder. *Id.* at \*6. That discretion is not present in Spark's contract. In fact, Spark's variable rate methodology does not disclose its inclusion of a margin at all, much less provide Spark with unfettered discretion to price gouge its unsuspecting customers. Thus, *Sevugan* is inapposite.[8]

---

[8] *Marshall v. Verde Energy USA, Inc.*, No 18-1344, 2019 WL 1254562 (D. N.J. Mar. 19, 2019) was, respectfully, wrongly decided. There, the court applied a specific, overly-expansive interpretation of an ESCO's contract terms in a light that was clearly not most favorable to the plaintiff, either as non-movant or non-drafter. Rather the *Marshall* court held that terms stating "the rate *may* fluctuate monthly with *market conditions*" should be read such that because "the Agreement uses the word 'may' rather than 'will'" it "does not mandate that [the ESCO] actually tie its monthly rate to market conditions." *Id.* at \*4 (emphasis in original). But a more reasonable interpretation of the phrase "may vary according to market conditions" is that the rate charged may vary as opposed to remaining static, but that if it does vary, any such variation will be based on market conditions. *Coda v. Constellation Energy Power Choice, LLC*, No. 17-3437, 2019 WL 4024807, at \*3-4 (D. N.J. Aug. 27, 2019) is inapposite because in that case the court "determined that the express language of the Agreement permitted Defendant to consider a list of non-exhaustive factors in setting the variable rate that were not necessarily tied to wholesale market rates." Here, Plaintiff not only alleges that Spark's rate is not reflective of wholesale costs, he also alleges that it is not reflective of Spark's own costs or reflective of retail market conditions (because its rates are consistently so much higher than other retail rates, including its own fixed rates).

Defendant's reliance on *Richards v. Direct Energy Svcs., LLC*, 915 F.3d 88, 99 (2d Cir. 2019), an out of circuit summary judgment decision, is unavailing, as the *Richards* plaintiff based his breach of contract claim only on allegations that the ESCO defendant's rates -- which could also incorporate "business . . . conditions" rather than just "market conditions" -- were different from the utility's rates, and even then to a much lesser extent than Defendant's deviation here, and conceded that they were in-line with other ESCO's rates.  Moreover, the Second Circuit clarified after *Richards* that the allegation that an ESCO does not base its rates on wholesale costs, when supported by applicable wholesale data, is sufficient at the pleading stage:

> The Mirkins have alleged, with the support of the expert calculations included in the Complaint and the PAC, that XOOM's rates showed significant upward deviations from the Market Supply Cost and continued to rise even when that cost fell. These allegations are sufficient to state a claim for breach of contract, as XOOM promised to base its rates on its supply costs and the Mirkins' allegations and calculations plausibly allege that this did not occur.

*Mirkin v. XOOM Energy, LLC*, 931 F.3d 173, 177 (2d Cir. 2019)

Likewise, in *Orange v. Starion Energy PA, Inc.*, 711 Fed. App'x. 681, 683-84 (3d Cir. 2017), the defendant's contract explicitly provided that it could base its rate on a number of diverse markets beyond the plaintiff's own area, and the plaintiff based his claim solely on a disconnect, over a relatively short amount of time, between the ESCO and the plaintiff's utility company.  Here, Harty has alleged, and

supported, a complete disconnect between Defendant's rates and the market conditions it promised to base its rate on and specifically that Spark charges rates that are "not competitive with those of other Illinois ESCOs."  TAC ¶ 62.[9]

### B. Harty Properly Pleads A Breach Of Contract Based On Defendant Charging An Undisclosed Monthly Administrative Fee.

Defendant argues that Harty cannot maintain a claim for breach of contract based on its charging an administrative fee that was never disclosed in his contract by attempting to parse the language of that contract in such a way that the representation that any administrative fee would be "disclosed in your UDS [Uniform Disclosure Statement] or Electric Service Agreement" only applies to his initial Fixed Rate Plan.  But in doing so, Defendant conveniently ignores that the description of the Variable Rate Plan in the same Terms of Service, under which Harty was charged such a fee, *does not allow for the charging of an administrative fee at all*.  While both the Fixed Rate Plan and Immediate Savings Plan sections of the Terms of Service explicitly state that Defendant may charge "a monthly administrative fee, the amount of which, if applicable is disclosed in your UDS [Uniform Disclosure Statement] or Electric Service Agreement," the Variable Rate

---

[9]  Indeed, Spark's rates are higher than those of 92% of other Illinois ESCOs.  TAC ¶ 62.  Defendant's contention that such a rate is commensurate with the market, Def. Mem. at 17-18, lacks credibility.  That there are a few other ESCOs who likewise engage in price gouging does not justify Spark's practices, and whether a rate that is only commensurate with 8% of other market participants is reflective of market conditions is a question for the jury.

Plan section, following directly after those two sections, says, in its entirety, only that it is "[a] month-to-month plan where your rate may vary according to market conditions."  ECF No. 100-2 at 4, § 1.  Given the absence of any disclosure of a monthly administrative fee in connection to the Variable Rate Plan, the contractual condition that any fee must be disclosed in the Disclosure Statement, and the contract's integration clause (ECF No. 100-2 at 5 §11(d)) it is plausible that the contract means no fee may be charged to variable rate customers.

Here too, any ambiguity should be construed in the light most favorable to Harty.  *See Silvis*, 674 Fed. App'x at 168; *Devcon Intern. Corp.*, 609 F.3d at 218. As the fee was only mentioned in a renewal letter, rather than in the Uniform Disclosure Statement or Electric Service Agreement, Harty has clearly pled a plausible claim for breach of contract based on this fee as well.[10]

Harty's allegations are properly focused on the transition to the variable-rate

---

[10] *See, e.g., Doherty v. The Hertz Corp.*, No. 10-359, 2010 WL 4883487, at *4-5 (D. N.J. 2010) (denying motion to dismiss breach of contract claim where plaintiff "has stated a colorable claim" that "the contract fails to provide adequate notice about the applicability of the fees"); *Mendez v. Avis Budget Grp., Inc.*, No. 11-6537, 2012 WL 1224708, at *4 (D.N.J. Apr. 10, 2012) (denying motion to dismiss where "[d]efendants breached the contract when they charged him undisclosed administrative fees and charged him more than the tolls charged to the car."); *Simonson v. Hertz Corp.*, No. 10-1585, 2011 WL 1205584, at *4 (D.N.J. Mar. 28, 2011) (plaintiff stated a claim for breach of contract where defendant charged an undisclosed administrative fee); *Klein v. Budget Rent a Car Sys., Inc.*, No. 12-7300, 2013 WL 1760557, at *6 (D.N.J. Apr. 24, 2013) (denying motion to dismiss breach of contract claim where the complaint raised plausible inferences that the contract did not disclose surcharge terms).

plan and Defendant's failure to follow the terms of the contract so as to inform him that it would begin charging this fee.   The only contract Harty received from Defendant stated that any applicable monthly administrative fee "is disclosed in your [Uniform Disclosure Statement] or Electric Service Agreement."  TAC at ¶ 71; ECF No. 100-2 at 3, § 1.   No subsequent Uniform Disclosure Statement or Electric Service Agreement was ever sent to Harty modifying this term of the contract he entered into.   And nothing in the Uniform Disclosure Statement and Terms of Service that Harty did receive at the outset contains any indication that there is a monthly administrative fee in any descriptions of the variable rate plans.  ECF No. 100-2.

## V.   Defendant Owed A Duty Of Good Faith And <u>Fair Dealing To Harty And All Illinois Customers.</u>

Unlike with Harty's ICFA claims, the TAC does not list a separate cause of action for breach of duty of good faith and fair dealing limited to the proposed Illinois subclass, rather it identifies a nationwide class for which this duty was breached.  TAC at ¶¶ 97-102.  This structure is appropriate because, nationwide, states recognize a common law duty of good faith and fair dealing between contracting parties, including in both New Jersey and Illinois. *See, e.g., R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 276 (2001) ("Every contract in New Jersey contains an implied covenant of good faith and fair dealing."); *Gore v. Ind. Ins. Co.*, 376 Ill. App. 3d 282, 286, 876 N.E.2d 156, 161 (Ill.

App. Ct. 2007) ("It is well established that the duty of good faith and fair dealing is implied in every contract."); *Northbrook Bank & Trust Co. v. 2120 Div. LLC*, 2015 Ill. App. 1st 133426 ¶ 21 (Ill. App. Ct. 2015) (Illinois); *see also* Restatement (Second) Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement").

The standards for determining whether such a duty has been breached is fundamentally the same throughout the states, and thus courts -- including the Third Circuit Court of Appeals -- have permitted certification of nationwide classes for breach of a duty of good faith and fair dealing. *See In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) (affirming certification of a national class for breach of the duty of good faith and fair dealing); *Trombley v. National City Bank*, 826 F. Supp. 2d 179 (D.D.C. 2011) (certifying a national settlement class for breach of the implied duty of good faith and fair dealing).

Defendant, however, seeks to conflate technical pleading standards in Illinois with the substantive existence of this duty it owes its Illinois customers. *See, e.g., Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988) ("[T]he requirements of the rules of procedure should be liberally construed and . . . 'mere technicalities' should not stand in the way of consideration of a case on its merits."); *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966) ("If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as

39

nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits.").

If, as a technical matter, it is more appropriate to plead one cause of action that encompasses both a breach of contract claim and the embedded claim that Spark violated the duty of good faith and fair dealing inherent in every contract under all 50 states' laws, Plaintiffs can clearly do so and they should be afforded an opportunity to amend the TAC accordingly.

## **CONCLUSION:**

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendant's Fourth Motion for Partial Dismissal, as to All of Michael Harty's Claims.

Dated:          November 4, 2019
                White Plains, New York

                                **FINKELSTEIN, BLANKINSHIP,**
                                **FREI-PEARSON & GARBER, LLP**

                By:    */s/ D. Greg Blankinship*
                       D. Greg Blankinship
                       Todd S. Garber
                       Chantal Khalil
                       **FINKELSTEIN, BLANKINSHIP,**
                       **FREI-PEARSON & GARBER, LLP**
                       445 Hamilton Avenue, Suite 605
                       White Plains, New York 10601
                       Tel: (914) 298-3281
                       Fax: (914) 824-1561
                       gblankinship@fbfglaw.com
                       tgarber@fbfglaw.com
                       ckhalil@fbfglaw.com

                       Matthew R. Mendelsohn
                       **MAZIE SLATER KATZ &**
                       **FREEMAN, LLC**
                       103 Eisenhower Parkway
                       Roseland, NJ 07068
                       Tel: (973) 228-9898
                       Fax: (973) 328-0303
                       mmendelsohn@mskf.net

                       Richard R Gordon
                       **GORDON LAW OFFICES, LTD.**
                       111 W. Washington Ave
                       Suite 1240
                       Chicago, IL 60602
                       (312) 332-5200
                       rrg@gordonlawchicago.com

                       *Attorneys for Plaintiffs*
                       *and Putative Class*

41